PUBLIC LAW 108–375—OCT. 28, 2004 118 STAT. 1811

Public Law 108–375
108th Congress

## An Act

To authorize appropriations for fiscal year 2005 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes.

Oct. 28, 2004
[H.R. 4200]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005.

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Ronald W. Reagan National Defense Authorization Act for Fiscal Year 2005".

**SEC. 2. ORGANIZATION OF ACT INTO DIVISIONS; TABLE OF CONTENTS.**

(a) DIVISIONS.—This Act is organized into three divisions as follows:
    (1) Division A—Department of Defense Authorizations.
    (2) Division B—Military Construction Authorizations.
    (3) Division C—Department of Energy National Security Authorizations and Other Authorizations.

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title.
Sec. 2. Organization of Act into divisions; table of contents.
Sec. 3. Congressional defense committees defined.

### DIVISION A—DEPARTMENT OF DEFENSE AUTHORIZATIONS

#### TITLE I—PROCUREMENT

**Subtitle A—Authorization of Appropriations**

Sec. 101. Army.
Sec. 102. Navy and Marine Corps.
Sec. 103. Air Force.
Sec. 104. Defense-wide activities.

**Subtitle B—Army Programs**

Sec. 111. Multiyear procurement authority for the light weight 155-millimeter howitzer program.
Sec. 112. Light utility helicopter program.

**Subtitle C—Navy Programs**

Sec. 121. DDG–51 modernization program.
Sec. 122. Repeal of authority for pilot program for flexible funding of cruiser conversions and overhauls.
Sec. 123. LHA(R) amphibious assault ship program.

**Subtitle D—Air Force Programs**

Sec. 131. Prohibition of retirement of KC–135E aircraft.

118 STAT. 2068    PUBLIC LAW 108–375—OCT. 28, 2004

"(A) an energy conservation measure, as defined in section 551; or

"(B) a water conservation measure that improves the efficiency of water use, is life-cycle cost-effective, and involves water conservation, water recycling or reuse, more efficient treatment of wastewater or stormwater, improvements in operation or maintenance efficiencies, retrofit activities, or other related activities, not at a Federal hydroelectric facility.".

Deadline.
42 USC 8287 note.

(f) REVIEW.—Not later than 180 days after the date of the enactment of this Act, the Secretary of Energy shall complete a review of the Energy Savings Performance Contract program to identify statutory, regulatory, and administrative obstacles that prevent Federal agencies from fully utilizing the program. In addition, this review shall identify all areas for increasing program flexibility and effectiveness, including audit and measurement verification requirements, accounting for energy use in determining savings, contracting requirements, including the identification of additional qualified contractors, and energy efficiency services covered. The Secretary shall report these findings to Congress and shall implement identified administrative and regulatory changes to increase program flexibility and effectiveness to the extent that such changes are consistent with statutory authority.

42 USC 8287 note.

(g) EXTENSION OF AUTHORITY.—Any energy savings performance contract entered into under section 801 of the National Energy Conservation Policy Act (42 U.S.C. 8287) after October 1, 2003, and before the date of enactment of this Act, shall be deemed to have been entered into pursuant to such section 801 as amended by subsection (a) of this section.

10 USC 801 note.

**SEC. 1091. SENSE OF CONGRESS AND POLICY CONCERNING PERSONS DETAINED BY THE UNITED STATES.**

(a) SENSE OF CONGRESS.—It is the sense of Congress that—

(1) the abuses inflicted upon detainees at the Abu Ghraib prison in Baghdad, Iraq, are inconsistent with the professionalism, dedication, standards, and training required of individuals who serve in the United States Armed Forces;

(2) the vast majority of members of the Armed Forces have upheld the highest possible standards of professionalism and morality in the face of illegal tactics and terrorist attacks and attempts on their lives;

(3) the abuse of persons in United States custody in Iraq is appropriately condemned and deplored by the American people;

(4) the Armed Forces are moving swiftly and decisively to identify, try, and, if found guilty, punish persons who perpetrated such abuse;

(5) the Department of Defense and appropriate military authorities must continue to undertake corrective action, as appropriate, to address chain-of-command deficiencies and the systemic deficiencies identified in the incidents in question;

(6) the Constitution, laws, and treaties of the United States and the applicable guidance and regulations of the United States Government prohibit the torture or cruel, inhuman, or degrading treatment of foreign prisoners held in custody by the United States;

PUBLIC LAW 108–375—OCT. 28, 2004          118 STAT. 2069

(7) the alleged crimes of a handful of individuals should not detract from the commendable sacrifices of over 300,000 members of the Armed Forces who have served, or who are serving, in Operation Iraqi Freedom; and

(8) no detainee shall be subject to torture or cruel, inhuman, or degrading treatment or punishment that is prohibited by the Constitution, laws, or treaties of United States.

(b) POLICY.—It is the policy of the United States to—

(1) ensure that no detainee shall be subject to torture or cruel, inhuman, or degrading treatment or punishment that is prohibited by the Constitution, laws, or treaties of the United States;

(2) investigate and prosecute, as appropriate, all alleged instances of unlawful treatment of detainees in a manner consistent with the international obligations, laws, or policies of the United States;

(3) ensure that all personnel of the United States Government understand their obligations in both wartime and peacetime to comply with the legal prohibitions against torture, cruel, inhuman, or degrading treatment of detainees in the custody of the United States;

(4) ensure that, in a case in which there is doubt as to whether a detainee is entitled to prisoner of war status under the Geneva Conventions, such detainee receives the protections accorded to prisoners of war until the detainee's status is determined by a competent tribunal; and

(5) expeditiously process and, if appropriate, prosecute detainees in the custody of the United States, including those in the custody of the United States Armed Forces at Guantanamo Bay, Cuba.

(c) DETAINEES.—For purposes of this section, the term "detainee" means a person in the custody or under the physical control of the United States as a result of armed conflict.

**SEC. 1092. ACTIONS TO PREVENT THE ABUSE OF DETAINEES.**

10 USC 801 note.

(a) POLICIES REQUIRED.—The Secretary of Defense shall ensure that policies are prescribed not later than 150 days after the date of the enactment of this Act regarding procedures for Department of Defense personnel and contractor personnel of the Department of Defense intended to ensure that members of the Armed Forces, and all persons acting on behalf of the Armed Forces or within facilities of the Armed Forces, treat persons detained by the United States Government in a humane manner consistent with the international obligations and laws of the United States and the policies set forth in section 1091(b).

(b) MATTERS TO BE INCLUDED.—In order to achieve the objective stated in subsection (a), the policies under that subsection shall specify, at a minimum, procedures for the following:

(1) Ensuring that each commander of a Department of Defense detention facility or interrogation facility—

(A) provides all assigned personnel with training, and documented acknowledgment of receiving training, regarding the law of war, including the Geneva Conventions; and

(B) establishes standard operating procedures for the treatment of detainees.

118 STAT. 2070         PUBLIC LAW 108–375—OCT. 28, 2004

(2) Ensuring that each Department of Defense contract in which contract personnel in the course of their duties interact with individuals detained by the Department of Defense on behalf of the United States Government include a requirement that such contract personnel have received training, and documented acknowledgment of receiving training, regarding the international obligations and laws of the United States applicable to the detention of personnel.

(3) Providing all detainees with information, in their own language, of the applicable protections afforded under the Geneva Conventions.

(4) Conducting periodic unannounced and announced inspections of detention facilities in order to provide continued oversight of interrogation and detention operations.

(5) Ensuring that, to the maximum extent practicable, detainees and detention facility personnel of a different gender are not alone together.

(c) SECRETARY OF DEFENSE CERTIFICATION.—The Secretary of Defense shall certify that all Federal employees and civilian contractors engaged in the handling or interrogation of individuals detained by the Department of Defense on behalf of the United States Government have fulfilled an annual training requirement on the law of war, the Geneva Conventions, and the obligations of the United States under international law.

**SEC. 1093. REPORTING REQUIREMENTS.**

(a) TRANSMISSION OF REGULATIONS, ETC.—Not later than 30 days after the date on which regulations, policies, and orders are first prescribed under section 1092(a), the Secretary of Defense shall transmit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives copies of such regulations, policies, or orders, together with a report on steps taken to the date of the report to implement section 1092.

(b) ONE-YEAR IMPLEMENTATION REPORT.—Not later than one year after the date on which regulations, policies, and orders are first prescribed under section 1092(a), the Secretary shall submit to such committees a report on further steps taken to implement section 1092 to the date of such report.

(c) ANNUAL REPORT.—Nine months after the date of the enactment of this Act and annually thereafter, the Secretary shall submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives a report for the preceding 12-months containing the following:

(1) Notice of any investigation into any violation of international obligations or laws of the United States regarding the treatment of individuals detained by the United States Armed Forces or by a person providing services to the Department of Defense on a contractual basis, if the notice will not compromise any ongoing criminal or administrative investigation or prosecution.

(2) General information on the foreign national detainees in the custody of the Department of Defense during the 12-month period covered by the report, including the following:

(A) The best estimate of the Secretary of Defense of the total number of detainees in the custody of the Department as of the date of the report.

PUBLIC LAW 108–375—OCT. 28, 2004     118 STAT. 2071

  (B) The best estimate of the Secretary of Defense of the total number of detainees released from the custody of the Department during the period covered by the report.
  (C) An aggregate summary of the number of persons detained as enemy prisoners of war, civilian internees, and unlawful combatants, including information regarding the average length of detention for persons in each category.
  (D) An aggregate summary of the nationality of persons detained.
  (E) Aggregate information as to the transfer of detainees to the jurisdiction of other countries, and the countries to which transferred.
 (d) CLASSIFICATION OF REPORTS.—Reports submitted under this section shall be submitted, to the extent practicable, in unclassified form, but may include a classified annex as necessary to protect the national security of the United States.
 (e) TERMINATION.—The requirements of this section shall cease to be in effect on December 31, 2007.

**SEC. 1094. FINDINGS AND SENSE OF CONGRESS CONCERNING ARMY SPECIALIST JOSEPH DARBY.**

 (a) FINDINGS.—Congress makes the following findings:
  (1) The need to act in accord with one's conscience, risking one's career and even the esteem of one's colleagues by pursuing what is right is especially important today.
  (2) While the Department of Defense investigates the horrific abuses in American detention facilities in Iraq, the Nation should bear in mind that the abuses were only brought to light because of the courage of an American soldier.
  (3) By alerting his superiors to abuses at Abu Ghraib prison in Iraq, Army Specialist Joseph Darby demonstrated the courage to speak out and do what is right for his country.
  (4) Such an action is especially important in light of the many challenges facing the country.
  (5) Specialist Darby deserves the Nation's thanks for speaking up and for standing up for what is right.
 (b) SENSE OF CONGRESS.—It is the sense of Congress that—
  (1) the Secretary of Defense should make every protection available to Army Specialist Joseph Darby and others who demonstrate such courage; and
  (2) Specialist Darby should be commended appropriately by the Secretary of the Army.

# TITLE XI—CIVILIAN PERSONNEL MATTERS

Sec. 1101. Payment of Federal employee health benefit premiums for mobilized Federal employees.
Sec. 1102. Foreign language proficiency pay.
Sec. 1103. Pay and performance appraisal parity for civilian intelligence personnel.
Sec. 1104. Pay parity for senior executives in defense nonappropriated fund instrumentalities.
Sec. 1105. Science, mathematics, and research for transformation (SMART) defense scholarship pilot program.
Sec. 1106. Report on how to recruit and retain individuals with foreign language skills.
Sec. 1107. Plan on implementation and utilization of flexible personnel management authorities in Department of Defense laboratories.