119 STAT. 3136　　PUBLIC LAW 109–163—JAN. 6, 2006

Public Law 109–163
109th Congress

## An Act

Jan. 6, 2006
[H.R. 1815]

To authorize appropriations for fiscal year 2006 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe military personnel strengths for such fiscal year, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

National Defense Authorization Act for Fiscal Year 2006.

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "National Defense Authorization Act for Fiscal Year 2006".

**SEC. 2. ORGANIZATION OF ACT INTO DIVISIONS; TABLE OF CONTENTS.**

(a) DIVISIONS.—This Act is organized into three divisions as follows:
　　(1) Division A—Department of Defense Authorizations.
　　(2) Division B—Military Construction Authorizations.
　　(3) Division C—Department of Energy National Security Authorizations and Other Authorizations.

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title.
Sec. 2. Organization of Act into divisions; table of contents.
Sec. 3. Congressional defense committees.

DIVISION A—DEPARTMENT OF DEFENSE AUTHORIZATIONS

TITLE I—PROCUREMENT

SUBTITLE A—AUTHORIZATION OF APPROPRIATIONS

Sec. 101. Army.
Sec. 102. Navy and Marine Corps.
Sec. 103. Air Force.
Sec. 104. Defense-wide activities.

SUBTITLE B—ARMY PROGRAMS

Sec. 111. Multiyear procurement authority for utility helicopters.
Sec. 112. Multiyear procurement authority for modernized target acquisition designation sight/pilot night vision sensors for AH–64 Apache attack helicopters.
Sec. 113. Multiyear procurement authority for conversion of AH–64A Apache attack helicopters to the AH–64D Block II configuration.
Sec. 114. Acquisition strategy for tactical wheeled vehicle programs.
Sec. 115. Report on Army Modular Force Initiative.

SUBTITLE C—NAVY PROGRAMS

Sec. 121. Virginia-class submarine program.
Sec. 122. LHA Replacement (LHA(R)) amphibious assault ship program.
Sec. 123. Cost limitation for next-generation destroyer program.
Sec. 124. Littoral Combat Ship (LCS) program.
Sec. 125. Prohibition on acquisition of next-generation destroyer through a single shipyard.

119 STAT. 3474  PUBLIC LAW 109–163—JAN. 6, 2006

**SEC. 1303. PERMANENT WAIVER OF RESTRICTIONS ON USE OF FUNDS FOR THREAT REDUCTION IN STATES OF THE FORMER SOVIET UNION.**

Section 1306 of the Bob Stump National Defense Authorization Act for Fiscal Year 2003 (Public Law 107–314; 22 U.S.C. 5952 note) is amended—
  (1) by striking subsections (c) and (d); and
  (2) by redesignating subsection (e) as subsection (c).

22 USC 5952.

President.

**SEC. 1304. REPORT ON ELIMINATION OF IMPEDIMENTS TO THREAT-REDUCTION AND NONPROLIFERATION PROGRAMS IN THE FORMER SOVIET UNION.**

Not later than November 1, 2006, the President shall submit to Congress a report on impediments to the effective conduct of Cooperative Threat Reduction programs and related threat reduction and nonproliferation programs and activities in the states of the former Soviet Union. The report shall—
  (1) identify the impediments to the rapid, efficient, and effective conduct of programs and activities of the Department of Defense, the Department of State, and the Department of Energy, including issues relating to access to sites, liability, and taxation; and
  (2) describe the plans of the United States to overcome or ameliorate such impediments, including an identification and discussion of new models and approaches that might be used to develop new relationships with entities in the states of the former Soviet Union capable of assisting in removing or ameliorating those impediments, and any congressional action that may be necessary for that purpose.

22 USC 5959.

**SEC. 1305. REPEAL OF REQUIREMENT FOR ANNUAL COMPTROLLER GENERAL ASSESSMENT OF ANNUAL DEPARTMENT OF DEFENSE REPORT ON ACTIVITIES AND ASSISTANCE UNDER COOPERATIVE THREAT REDUCTION PROGRAMS.**

Section 1308 of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001 (as enacted into law by Public Law 106–398; 114 Stat. 1654A-341) is amended by striking subsection (e).

Detainee Treatment Act of 2005.

# TITLE XIV—MATTERS RELATING TO DETAINEES

Sec. 1401. Short title
Sec. 1402. Uniform standards for the interrogation of persons under the detention of the Department of Defense
Sec. 1403. Prohibition on cruel, inhuman, or degrading treatment or punishment of persons under custody or control of the United States Government
Sec. 1404. Protection of United States Government personnel engaged in authorized interrogations
Sec. 1405. Procedures for status review of detainees outside the United States
Sec. 1406. Training of Iraqi security forces regarding treatment of detainees

42 USC 2000dd note.

**SEC. 1401. SHORT TITLE.**

This title may be cited as the "Detainee Treatment Act of 2005".

PUBLIC LAW 109–163—JAN. 6, 2006   119 STAT. 3475

**SEC. 1402. UNIFORM STANDARDS FOR THE INTERROGATION OF PERSONS UNDER THE DETENTION OF THE DEPARTMENT OF DEFENSE.**

10 USC 801 note.

(a) IN GENERAL.—No person in the custody or under the effective control of the Department of Defense or under detention in a Department of Defense facility shall be subject to any treatment or technique of interrogation not authorized by and listed in the United States Army Field Manual on Intelligence Interrogation.

(b) APPLICABILITY.—Subsection (a) shall not apply with respect to any person in the custody or under the effective control of the Department of Defense pursuant to a criminal law or immigration law of the United States.

(c) CONSTRUCTION.—Nothing in this section shall be construed to affect the rights under the United States Constitution of any person in the custody or under the physical jurisdiction of the United States.

**SEC. 1403. PROHIBITION ON CRUEL, INHUMAN, OR DEGRADING TREATMENT OR PUNISHMENT OF PERSONS UNDER CUSTODY OR CONTROL OF THE UNITED STATES GOVERNMENT.**

42 USC 2000dd.

(a) IN GENERAL.—No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.

(b) CONSTRUCTION.—Nothing in this section shall be construed to impose any geographical limitation on the applicability of the prohibition against cruel, inhuman, or degrading treatment or punishment under this section.

(c) LIMITATION ON SUPERSEDURE.—The provisions of this section shall not be superseded, except by a provision of law enacted after the date of the enactment of this Act which specifically repeals, modifies, or supersedes the provisions of this section.

(d) CRUEL, INHUMAN, OR DEGRADING TREATMENT OR PUNISHMENT DEFINED.—In this section, the term "cruel, inhuman, or degrading treatment or punishment" means the cruel, unusual, and inhumane treatment or punishment prohibited by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, as defined in the United States Reservations, Declarations and Understandings to the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment done at New York, December 10, 1984.

**SEC. 1404. PROTECTION OF UNITED STATES GOVERNMENT PERSONNEL ENGAGED IN AUTHORIZED INTERROGATIONS.**

42 USC 2000dd–1.

(a) PROTECTION OF UNITED STATES GOVERNMENT PERSONNEL.—In any civil action or criminal prosecution against an officer, employee, member of the Armed Forces, or other agent of the United States Government who is a United States person, arising out of the officer, employee, member of the Armed Forces, or other agent's engaging in specific operational practices, that involve detention and interrogation of aliens who the President or his designees have determined are believed to be engaged in or associated with international terrorist activity that poses a serious, continuing threat to the United States, its interests, or its allies, and that were officially authorized and determined to be lawful at the time that they were conducted, it shall be a defense that such officer, employee, member of the Armed Forces, or other agent did not

119 STAT. 3476  PUBLIC LAW 109–163—JAN. 6, 2006

know that the practices were unlawful and a person of ordinary sense and understanding would not know the practices were unlawful. Good faith reliance on advice of counsel should be an important factor, among others, to consider in assessing whether a person of ordinary sense and understanding would have known the practices to be unlawful. Nothing in this section shall be construed to limit or extinguish any defense or protection otherwise available to any person or entity from suit, civil or criminal liability, or damages, or to provide immunity from prosecution for any criminal offense by the proper authorities.

(b) COUNSEL.—The United States Government may provide or employ counsel, and pay counsel fees, court costs, bail, and other expenses incident to the representation of an officer, employee, member of the Armed Forces, or other agent described in subsection (a), with respect to any civil action or criminal prosecution arising out of practices described in that subsection, under the same conditions, and to the same extent, to which such services and payments are authorized under section 1037 of title 10, United States Code.

10 USC 801 note.

**SEC. 1405. PROCEDURES FOR STATUS REVIEW OF DETAINEES OUTSIDE THE UNITED STATES.**

(a) SUBMITTAL OF PROCEDURES FOR STATUS REVIEW OF DETAINEES AT GUANTANAMO BAY, CUBA, AND IN AFGHANISTAN AND IRAQ.—

Deadline. Reports.

(1) IN GENERAL.—Not later than 180 days after the date of the enactment of this Act, the Secretary of Defense shall submit to the Committee on Armed Services and the Committee on the Judiciary of the Senate and the Committee on Armed Services and the Committee on the Judiciary of the House of Representatives a report setting forth—

(A) the procedures of the Combatant Status Review Tribunals and the Administrative Review Boards established by direction of the Secretary of Defense that are in operation at Guantanamo Bay, Cuba, for determining the status of the detainees held at Guantanamo Bay or to provide an annual review to determine the need to continue to detain an alien who is a detainee; and

(B) the procedures in operation in Afghanistan and Iraq for a determination of the status of aliens detained in the custody or under the physical control of the Department of Defense in those countries.

(2) DESIGNATED CIVILIAN OFFICIAL.—The procedures submitted to Congress pursuant to paragraph (1)(A) shall ensure that the official of the Department of Defense who is designated by the President or Secretary of Defense to be the final review authority within the Department of Defense with respect to decisions of any such tribunal or board (referred to as the "Designated Civilian Official") shall be a civilian officer of the Department of Defense holding an office to which appointments are required by law to be made by the President, by and with the advice and consent of the Senate.

(3) CONSIDERATION OF NEW EVIDENCE.—The procedures submitted under paragraph (1)(A) shall provide for periodic review of any new evidence that may become available relating to the enemy combatant status of a detainee.

(b) CONSIDERATION OF STATEMENTS DERIVED WITH COERCION.—

PUBLIC LAW 109–163—JAN. 6, 2006     119 STAT. 3477

(1) ASSESSMENT.—The procedures submitted to Congress pursuant to subsection (a)(1)(A) shall ensure that a Combatant Status Review Tribunal or Administrative Review Board, or any similar or successor administrative tribunal or board, in making a determination of status or disposition of any detainee under such procedures, shall, to the extent practicable, assess—

(A) whether any statement derived from or relating to such detainee was obtained as a result of coercion; and

(B) the probative value, if any, of any such statement.

(2) APPLICABILITY.—Paragraph (1) applies with respect to any proceeding beginning on or after the date of the enactment of this Act.

(c) REPORT ON MODIFICATION OF PROCEDURES.—The Secretary of Defense shall submit to the committees specified in subsection (a)(1) a report on any modification of the procedures submitted under subsection (a). Any such report shall be submitted not later than 60 days before the date on which such modification goes into effect.

(d) ANNUAL REPORT.—

(1) REPORT REQUIRED.—The Secretary of Defense shall submit to Congress an annual report on the annual review process for aliens in the custody of the Department of Defense outside the United States. Each such report shall be submitted in unclassified form, with a classified annex, if necessary. The report shall be submitted not later than December 31 each year.

(2) ELEMENTS OF REPORT.—Each such report shall include the following with respect to the year covered by the report:

(A) The number of detainees whose status was reviewed.

(B) The procedures used at each location.

(e) JUDICIAL REVIEW OF DETENTION OF ENEMY COMBATANTS.—

(1) IN GENERAL.—Section 2241 of title 28, United States Code, is amended by adding at the end the following:

"(e) Except as provided in section 1405 of the Detainee Treatment Act of 2005, no court, justice, or judge shall have jurisdiction to hear or consider—

"(1) an application for a writ of habeas corpus filed by or on behalf of an alien detained by the Department of Defense at Guantanamo Bay, Cuba; or

"(2) any other action against the United States or its agents relating to any aspect of the detention by the Department of Defense of an alien at Guantanamo Bay, Cuba, who—

"(A) is currently in military custody; or

"(B) has been determined by the United States Court of Appeals for the District of Columbia Circuit in accordance with the procedures set forth in section 1405(e) of the Detainee Treatment Act of 2005 to have been properly detained as an enemy combatant.".

(2) REVIEW OF DECISIONS OF COMBATANT STATUS REVIEW TRIBUNALS OF PROPRIETY OF DETENTION.—

(A) IN GENERAL.—Subject to subparagraphs (B), (C), and (D), the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant

119 STAT. 3478        PUBLIC LAW 109–163—JAN. 6, 2006

Status Review Tribunal that an alien is properly detained as an enemy combatant.
  (B) LIMITATION ON CLAIMS.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit under this paragraph shall be limited to claims brought by or on behalf of an alien—
    (i) who is, at the time a request for review by such court is filed, detained by the Department of Defense at Guantanamo Bay, Cuba; and
    (ii) for whom a Combatant Status Review Tribunal has been conducted, pursuant to applicable procedures specified by the Secretary of Defense.
  (C) SCOPE OF REVIEW.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit on any claims with respect to an alien under this paragraph shall be limited to the consideration of—
    (i) whether the status determination of the Combatant Status Review Tribunal with regard to such alien was consistent with the standards and procedures specified by the Secretary of Defense for Combatant Status Review Tribunals (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence and allowing a rebuttable presumption in favor the Government's evidence); and
    (ii) to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States.
  (D) TERMINATION ON RELEASE FROM CUSTODY.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit with respect to the claims of an alien under this paragraph shall cease upon the release of such alien from the custody of the Department of Defense.
(3) REVIEW OF FINAL DECISIONS OF MILITARY COMMISSIONS.—
  (A) IN GENERAL.—Subject to subparagraphs (B), (C), and (D), the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of any final decision rendered pursuant to Military Commission Order No. 1, dated August 31, 2005 (or any successor military order).
  (B) GRANT OF REVIEW.—Review under this paragraph—
    (i) with respect to a capital case or a case in which the alien was sentenced to a term of imprisonment of 10 years or more, shall be as of right; or
    (ii) with respect to any other case, shall be at the discretion of the United States Court of Appeals for the District of Columbia Circuit.
  (C) LIMITATION ON APPEALS.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit under this paragraph shall be limited to an appeal brought by or on behalf of an alien—
    (i) who was, at the time of the proceedings pursuant to the military order referred to in subparagraph

(A), detained by the Department of Defense at Guantanamo Bay, Cuba; and

(ii) for whom a final decision has been rendered pursuant to such military order.

(D) SCOPE OF REVIEW.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit on an appeal of a final decision with respect to an alien under this paragraph shall be limited to the consideration of—

(i) whether the final decision was consistent with the standards and procedures specified in the military order referred to in subparagraph (A); and

(ii) to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to reach the final decision is consistent with the Constitution and laws of the United States.

(4) RESPONDENT.—The Secretary of Defense shall be the named respondent in any appeal to the United States Court of Appeals for the District of Columbia Circuit under this subsection.

(f) CONSTRUCTION.—Nothing in this section shall be construed to confer any constitutional right on an alien detained as an enemy combatant outside the United States.

(g) UNITED STATES DEFINED.—For purposes of this section, the term "United States", when used in a geographic sense, is as defined in section 101(a)(38) of the Immigration and Nationality Act and, in particular, does not include the United States Naval Station, Guantanamo Bay, Cuba.

(h) EFFECTIVE DATE.—

(1) IN GENERAL.—This section shall take effect on the date of the enactment of this Act.

(2) REVIEW OF COMBATANT STATUS TRIBUNAL AND MILITARY COMMISSION DECISIONS.—Paragraphs (2) and (3) of subsection (e) shall apply with respect to any claim whose review is governed by one of such paragraphs and that is pending on or after the date of the enactment of this Act.

*Applicability.*

**SEC. 1406. TRAINING OF IRAQI SECURITY FORCES REGARDING TREATMENT OF DETAINEES.**

*10 USC 801 note.*

(a) REQUIRED POLICIES.—

(1) IN GENERAL.—The Secretary of Defense shall prescribe policies designed to ensure that all military and civilian Department of Defense personnel or contractor personnel of the Department of Defense responsible for the training of any unit of the Iraqi Security Forces provide training to such units regarding the international obligations and laws applicable to the humane treatment of detainees, including protections afforded under the Geneva Conventions and the Convention Against Torture.

(2) ACKNOWLEDGMENT OF TRAINING.—The Secretary shall ensure that, for all personnel of the Iraqi Security Forces who are provided training referred to in paragraph (1), there is documented acknowledgment that such training has been provided.

119 STAT. 3480   PUBLIC LAW 109–163—JAN. 6, 2006

(3) DEADLINE FOR POLICIES TO BE PRESCRIBED.—The policies required by paragraph (1) shall be prescribed not later than 180 days after the date of the enactment of this Act.

(b) ARMY FIELD MANUAL.—

(1) TRANSLATION.—The Secretary of Defense shall provide for the unclassified portions of the United States Army Field Manual on Intelligence Interrogation to be translated into Arabic and any other language the Secretary determines appropriate for use by members of the Iraqi security forces.

(2) DISTRIBUTION.—The Secretary of Defense shall provide for such manual, as translated, to be distributed to all appropriate officials of the Iraqi Government, including, but not limited to, the Iraqi Minister of Defense, the Iraqi Minister of Interior, senior Iraqi military personnel, and appropriate members of the Iraqi Security Forces with a recommendation that the principles that underlay the manual be adopted by the Iraqis as the basis for their policies on interrogation of detainees.

Deadline.
Reports.

(c) TRANSMITTAL TO CONGRESSIONAL COMMITTEES.—Not less than 30 days after the date on which policies are first prescribed under subsection (a), the Secretary of Defense shall submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives copies of such regulations, policies, or orders, together with a report on steps taken to the date of the report to implement this section.

(d) ANNUAL REPORT.—Not less than one year after the date of the enactment of this Act, and annually thereafter, the Secretary of Defense shall submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives a report on the implementation of this section.

# TITLE XV—AUTHORIZATION FOR INCREASED COSTS DUE TO OPERATION IRAQI FREEDOM AND OPERATION ENDURING FREEDOM

Sec. 1501. Purpose.
Sec. 1502. Army procurement.
Sec. 1503. Navy and Marine Corps procurement.
Sec. 1504. Air Force procurement.
Sec. 1505. Defense-wide activities procurement.
Sec. 1506. Research, development, test and evaluation.
Sec. 1507. Operation and maintenance.
Sec. 1508. Defense Working Capital Fund.
Sec. 1509. Defense Health Program.
Sec. 1510. Military personnel.
Sec. 1511. Iraq Freedom Fund.
Sec. 1512. Treatment as additional authorizations.
Sec. 1513. Transfer authority.
Sec. 1514. Availability of funds.

**SEC. 1501. PURPOSE.**

The purpose of this title is to authorize emergency supplemental appropriations for the Department of Defense for fiscal year 2006 to provide funds for additional costs due to Operation Iraqi Freedom and Operation Enduring Freedom pursuant to section 402 of H. Con. Res. 95 (109th Congress), the concurrent resolution on the budget for fiscal year 2006.