# FM 27-10

### DEPARTMENT OF THE ARMY FIELD MANUAL

# THE LAW
# OF
# LAND WARFARE

**DEPARTMENT OF THE ARMY** • **JULY 1956**

FM 27-10

# CHAPTER 8

# REMEDIES FOR VIOLATION OF INTERNATIONAL LAW; WAR CRIMES

## Section I. REMEDIES AND REPRISALS

### 495. Remedies of Injured Belligerent

In the event of violation of the law of war, the injured party may legally resort to remedial action of the following types:

  *a.* Publication of the facts, with a view to influencing public opinion against the offending belligerent.

  *b.* Protest and demand for compensation and/or punishment of the individual offenders. Such communications may be sent through the protecting power, a humanitarian organization performing the duties of a protecting power, or a neutral state, or by parlementaire direct to the commander of the offending forces. Article 3, H. IV, provides in this respect:

  **A belligerent party which violates the provisions of the said Regulations shall, if the case demands, be liable to pay compensation. It shall be responsible for all acts committed by persons forming part of its armed forces.**

  *c.* Solicitation of the good offices, mediation, or intervention of neutral States for the purpose of making the enemy observe the law of war. See Articles 11, *GWS*; 11, *GWS Sea*; 11, *GPW*; 12, *GC* (par. 19), concerning conciliation procedure through the protecting powers.

  *d.* Punishment of captured offenders as war criminals.

  *e.* Reprisals.

### 496. Inquiry Concerning Violations of Geneva Conventions of 1949

  *GWS, GWS Sea, GPW,* and *GC* contain a common provision that—

At the request of a Party to the conflict, an enquiry shall be instituted, in a manner to be decided between the interested Parties, concerning any alleged violation of the Convention.

If agreement has not been reached concerning the procedure for the enquiry, the Parties should agree on the choice of an umpire who will decide upon the procedure to be followed.

Once the violation has been established, the Parties to the conflict shall put an end to it and shall repress it with the least possible delay. (*GWS*, art. 52; *GWS Sea*, art. 53; *GPW*, art. 132; *GC*, art. 149.)

### 497. Reprisals

  *a. Definition.* Reprisals are acts of retaliation in the form of conduct which would otherwise be unlawful, resorted to by one belligerent against enemy personnel or property for acts of warfare committed by the other belligerent in violation of the law of war, for the purpose of enforcing future compliance with the recognized rules of civilized warfare. For example, the employment by a belligerent of a weapon the use of which is normally precluded by the law of war would constitute a lawful reprisal for intentional mistreatment of prisoners of war held by the enemy.

  *b. Priority of Other Remedies.* Other means of securing compliance with the law of war should normally be exhausted before resort is had to reprisals. This course should be pursued unless the safety of the troops requires immediate drastic action and the persons who actually committed the offenses cannot be secured. Even when appeal to the enemy for redress has failed, it may be a matter of policy to consider, before resorting to reprisals, whether the opposing forces are not more likely to be influenced by a steady adherence to the law of war on the part of their adversary.

  *c. Against Whom Permitted.* Reprisals against the persons or property of prisoners of war, including the wounded and sick, and protected civilians are forbidden (*GPW*, art. 13; *GC*, art. 33). Collective penalties and punishment of prisoners of war and protected civilians are likewise prohibited (*GPW*, art. 87;

*GC*, art. 99). However, reprisals may still be visited on enemy troops who have not yet fallen into the hands of the forces making the reprisals.

    *d. When and How Employed.* Reprisals are never adopted merely for revenge, but only as an unavoidable last resort to induce the enemy to desist from unlawful practices. They should never be employed by individual soldiers except by direct orders of a commander, and the latter should give such orders only after careful inquiry into the alleged offense. The highest accessible military authority should be consulted unless immediate action is demanded, in which event a subordinate commander may order appropriate reprisals upon his own initiative. Ill-considered action may subsequently be found to have been wholly unjustified and will subject the responsible officer himself to punishment for a violation of the law of war. On the other hand, commanding officers must assume responsibility for retaliative measures when an unscrupulous enemy leaves no other recourse against the repetition of unlawful acts.

    *e. Form of Reprisal.* The acts resorted to by way of reprisal need not conform to those complained of by the injured party, but should not be excessive or exceed the degree of violence committed by the enemy.

    *f. Procedure.* The rule requiring careful inquiry into the real occurrence will always be followed unless the safety of the troops requires immediate drastic action and the persons who actually committed the offense cannot be ascertained.

    *g. Hostages.* The taking of hostages is forbidden (*GC*, art. 34). The taking of prisoners by way of reprisal for acts previously committed (so-called "reprisal prisoners") is likewise forbidden. (See *GC*, art. 33.)

## Section II. CRIMES UNDER INTERNATIONAL LAW

### 498. Crimes Under International Law

Any person, whether a member of the armed forces or a civilian, who commits an act which constitutes a crime under international law is responsible therefor and liable to punishment. Such offenses in connection with war comprise:

    *a.* Crimes against peace.
    *b.* Crimes against humanity.
    *c.* War crimes.

Although this manual recognizes the criminal responsibility of individuals for those offenses which may comprise any of the foregoing types of crimes, members of the armed forces will normally be concerned, only with those offenses constituting "war crimes."

### 499. War Crimes

The term "war crime" is the technical expression for a violation of the law of war by any person or persons, military or civilian. Every violation of the law of war is a war crime.

### 500. Conspiracy, Incitement, Attempts, and Complicity

Conspiracy, direct incitement, and attempts to commit, as well as complicity in the commission of, crimes against peace, crimes against humanity, and war crimes are punishable.

### 501. Responsibility for Acts of Subordinates

In some cases, military commanders may be responsible for war crimes committed by subordinate members of the armed forces, or other persons subject to their control. Thus, for instance, when troops commit massacres and atrocities against the civilian population of occupied territory or against prisoners of war, the responsibility may rest not only with the actual perpetrators but also with the commander. Such a responsibility arises directly when the acts in question have been committed in pursuance of an order of the commander concerned. The commander is also responsible if he has actual knowledge, or should have knowledge, through reports received by him or through other means, that troops or other persons subject to his control are about to commit or have committed a war crime and he fails to take the necessary and reasonable steps to insure compliance with the law of war or to punish violators thereof.

### 502. Grave Breaches of the Geneva Conventions of 1949 as War Crimes

The Geneva Conventions of 1949 define the following acts as "grave breaches," if committed against persons or property protected by the Conventions:

    *a.* GWS and GWS Sea.

Grave breaches to which the preceding Article relates shall be those involving any of the following acts, if committed against persons or property protected by the Convention: willful killing, torture or inhuman treatment, including biological experiments, willfully causing great suffering or serious injury to body or health, and extensive destruction and appropriation of property, not justified by military necessity and carried out unlawfully

and wantonly. (*GWS*, art. 50; *GWS Sea*, art. 51.)

    *b.* GPW.

Grave breaches to which the preceding Article relates shall be those involving any of the following acts, if committed against persons or property protected by the Convention: willful killing, torture or inhuman treatment, including biological experiments, willfully causing great suffering or serious injury to body or health, compelling a prisoner of war to serve in the forces of the hostile Power, or willfully depriving a prisoner of war of the rights of fair and regular trial prescribed in this Convention. (*GPW*, art. 130.)

    *c.* GC.

Grave breaches to which the preceding Article relates shall be those involving any of the following acts, if committed against persons or property protected by the present Convention: willful killing, torture or inhuman treatment, including biological experiments willfully causing great suffering or serious injury to body or health, unlawful deportation or transfer or unlawful confinement of a protected person, compelling a protected person to serve in the forces of a hostile Power, or willfully depriving a protected person of the rights of fair and regular trial prescribed in the present Convention, taking of hostages and extensive destruction and appropriation of property, not justified by military necessity and carried out unlawfully and wantonly. (*GC*, art. 147.)

### 503. Responsibilities of the Contracting Parties

No High Contracting Party shall be allowed to absolve itself or any other High Contracting Party of any liability incurred by itself or by another High Contracting Party in respect of breaches referred to in the preceding Article. (*GWS*, art. 51; *GWS Sea*, art. 52; *GPW*, art. 131; *GC*, art. 148.)

### 504. Other Types of War Crimes

In addition to the "grave breaches" of the Geneva Conventions of 1949, the following acts are representative of violations of the law of war ("war crimes"):

    *a.* Making use of poisoned or otherwise forbidden arms or ammunition.

    *b.* Treacherous request for quarter.

    *c.* Maltreatment of dead bodies.

    *d.* Firing on localities which are undefended and without military significance.

    *e.* Abuse of or firing on the flag of truce.

    *f.* Misuse of the Red Cross emblem.

    *g.* Use of civilian clothing by troops to conceal their military character during battle.

    *h.* Improper use of privileged buildings for military purposes.

    *i.* Poisoning of wells or streams.

    *j.* Pillage or purposeless destruction.

    *k.* Compelling prisoners of war to perform prohibited labor.

    *l.* Killing without trial spies or other persons who have committed hostile acts.

    *m.* Compelling civilians to perform prohibited labor.

    *n.* Violation of surrender terms.

## Section III. PUNISHMENT OF WAR CRIMES

### 505. Trials

*a. Nature of Proceeding.* Any person charged with a war crime has the right to a fair trial on the facts and law.

*b. Rights of Accused.* Persons accused of "grave breaches" of the Geneva Conventions of 1949 are to be tried under conditions no less favorable than those provided by Article 105 and those following (par. 181 and following) of *GPW* (*GWS*, art. 49; *GWS Sea*, art. 50; *GPW*, art. 129; *GC*, art. 146, 4th par. only; par. 506 herein.)

*c. Rights of Prisoners of War.* Pursuant to Article 85, *GPW* (par. 161), prisoners of war accused of war crimes benefit from the provisions of *GPW*, especially Articles 82-108 (paras. 158-184).

*d. How Jurisdiction Exercised.* War crimes are within the jurisdiction of general courts-martial (UCMJ, Art. 18), military commissions, provost courts, military government courts, and other military tribunals (UCMJ, Art. 21) of the United States, as well as of inter-national tribunals.

*e. Law Applied.* As the international law of war is part of the law of the land in the United States, enemy personnel charged with war crimes are tried directly under international law without recourse to the statutes of the United States. However, directives declaratory of international law may be promulgated to assist such tribunals in the performance of their function. (See paras. 506 and 507.)

### 506. Suppression of War Crimes

*a. Geneva Conventions of 1949.* The Geneva Conventions of 1949 contain the following common undertakings:

**The High Contracting Parties undertake to enact any legislation necessary to provide effective penal sanctions for persons committing, or ordering to be committed, any of the grave breaches of the present Convention defined in the following Article.**

**Each High Contracting Party shall be under the obligation to search for persons alleged to have committed, or to have ordered to be committed, such grave breaches and shall bring such persons, regardless of their nationality, before its own courts. It may also, if it prefers, and in accordance with the provisions of its own legislation, hand such persons over for trial to another High Contracting Party concerned, provided such High Contracting Party has made out a prima facie case.**

**Each High Contracting Party shall take measures necessary for the suppression of all acts contrary to the provisions of the present Convention other than the grave breaches defined in the following Article.**

**In all circumstances, the accused persons shall benefit by safeguards of proper trial and defence, which shall not be less favorable than those provided by Article 105 and those following of the Geneva Convention relative to the Treatment of Prisoners of War of August 12, 1949. (*GWS*, art. 49; *GWS Sea*, art. 50; *GPW*, art. 129; *GC*, art. 146.)**

*b. Declaratory Character of Above Principles.* The principles quoted in a, above, are declaratory of the obligations of belligerents under customary international law to take measures for the punishment of war crimes committed by all persons, including members of a belligerent's own armed forces.

*c. Grave Breaches.* "Grave breaches" of the Geneva Conventions of 1949 and other war crimes which are committed by enemy personnel or persons associated with the enemy are tried and punished by United States tribunals as violations of international law.

If committed by persons subject to United States military law, these "grave breaches" constitute acts punishable under the Uniform Code of Military Justice. Moreover, most of the acts designated as "grave breaches" are, if committed within the United States, violations of domestic law over which the civil courts can exercise jurisdiction.

### 507. Universality of Jurisdiction

*a. Victims of War Crimes.* The jurisdiction of United States military tribunals in connection with war crimes is not limited to offenses committed against nationals of the United States but extends also to all offenses of this nature committed against nationals of allies and of cobelligerents and stateless persons.

*b. Persons Charged With War Crimes.* The United States normally punishes war crimes as such only if they are committed by enemy nationals or by persons serving the interests of the enemy State. Violations of the law of war committed by persons subject to the military law of the United States will usually constitute violations of the Uniform Code of Military Justice and, if so, will be prosecuted under that Code. Violations of the law of war committed within the United States by other persons will usually constitute violations of federal or state criminal law and preferably will be prosecuted under such law (see paras. 505 and 506). Commanding officers of United States troops must insure that war crimes committed by members of their forces against enemy personnel are promptly and adequately punished.

### 508. Penal Sanctions

The punishment imposed for a violation of the law of war must be proportionate to the gravity of the offense. The death penalty may be imposed for grave breaches of the law. Corporal punishment is excluded. Punishments should be deterrent, and in imposing a sentence of imprisonment it is not necessary to take into consideration the end of the war, which does not of itself limit the imprisonment to be imposed.

## Section IV. DEFENSES NOT AVAILABLE

### 509. Defense of Superior Orders

*a.* The fact that the law of war has been violated pursuant to an order of a superior authority, whether military or civil, does not deprive the act in question of its character of a war crime, nor does it constitute a defense in the trial of an accused individual, unless he did not know and could not reasonably have been expected to know that the act ordered was unlawful. In all cases where the order is held not to constitute a defense to an allegation of war crime, the fact that the individual was acting pursuant to orders maybe considered in mitigation of punishment.

*b.* In considering the question whether a superior order constitutes a valid defense, the court shall take into consideration the fact that obedience to lawful military orders is the duty of every member of the armed forces; that the latter cannot be expected, in conditions of war discipline, to weigh scrupulously the legal merits of the orders received; that certain rules of warfare may be controversial; or that an act otherwise amounting to a war crime may be done in obedience to orders conceived as a measure of reprisal. At the same time it must be borne in mind that members of the armed forces are bound to obey only lawful orders (e. g., UCMJ, Art. 92).

### 510. Government Officials

The fact that a person who committed an act which constitutes a war crime acted as the head of a State or as a responsible government official does not relieve him from responsibility for his act.

### 511. Acts Not Punished in Domestic Law

The fact that domestic law does not impose a penalty for an act which constitutes a crime under international law does not relieve the person who committed the act from responsibility under international law.