## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------x

IN RE:

IRAQ AND AFGHANISTAN DETAINEES            Misc. No. 06-145 TFH
LITIGATION

This document relates to:
ALI V. PAPPAS                              Civ. No. 05-cv-1377-TFH
ALI V. RUMSFELD                            Civ. No. 05-cv-1378-TFH
ALI V. KARPINSKI                           Civ. No. 05-cv-1379-TFH
ALI V. SANCHEZ                             Civ. No. 05-cv-1380-TFH

-------------------------------------------------------------x


### BRIEF OF J. HERMAN BURGERS AND THEO VAN BOVEN
### AS AMICI CURIAE IN SUPPORT OF
### PLAINTIFFS' OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS


James J. Silk, DC Bar No. 428 433
Molly K. Beutz
Allard K. Lowenstein International
    Human Rights Clinic
Yale Law School
P.O. Box 208215
New Haven, CT 06520-8215
Tel: 203-432-7480

Counsel for Amici Curiae

June 30, 2006

TABLE OF CONTENTS

INTERESTS OF AMICI CURIAE.................................................................................1

ISSUE PRESENTED...................................................................................................3

STATEMENT OF FACTS............................................................................................3

INTRODUCTION.......................................................................................................3

ARGUMENT.............................................................................................................4

I.    THE UNITED STATES PROHIBITS TORTURE AND OTHER CRUEL, INHUMAN, OR
      DEGRADING TREATMENT..............................................................................5

      A.    THE UNITED STATES HAS CONSISTENTLY PROHIBITED TORTURE IN LAW,
            POLICY, AND PRACTICE........................................................................5

      B.    THE UNITED STATES HAS CONSISTENTLY PROHIBITED CRUEL, INHUMAN,
            OR DEGRADING TREATMENT IN LAW, POLICY, AND PRACTICE............8

II.   TORTURE AND OTHER CRUEL, INHUMAN, OR DEGRADING TREATMENT VIOLATE
      CUSTOMARY INTERNATIONAL LAW..............................................................11

      A.    THE INTERNATIONAL LAW PROHIBITION AGAINST TORTURE AND OTHER
            CRUEL, INHUMAN, OR DEGRADING TREATMENT IS UNIVERSAL.......11

      B.    THE INTERNATIONAL LAW PROHIBITION AGAINST TORTURE AND OTHER
            CRUEL, INHUMAN, OR DEGRADING TREATMENT IS OBLIGATORY UNDER
            ALL CIRCUMSTANCES.........................................................................16

      C.    THE INTERNATIONAL LAW PROHIBITION AGAINST TORTURE AND OTHER
            CRUEL, INHUMAN, OR DEGRADING TREATMENT IS SPECIFIC AND
            DEFINABLE.........................................................................................19

CONCLUSION.........................................................................................................22

**INTERESTS OF AMICI CURIAE**

**J. HERMAN BURGERS** and **THEO VAN BOVEN** are two of the world's most highly

respected experts on the international law of torture and cruel, inhuman, or degrading treatment.

Mr. Burgers chaired the U.N. working group that drafted the Convention against Torture

and Other Cruel, Inhuman or Degrading Treatment or Punishment, an international treaty that

has been ratified by one hundred forty countries, including the United States.  He co-authored the

definitive treatise on the Convention: <u>The United Nations Convention against Torture: A</u>

<u>Handbook on the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment</u>

<u>or Punishment</u>.  Mr. Burgers also served in the Netherlands Ministry of Foreign Affairs for more

than thirty years, working in the Treaty Department (1953-1958), the European Department

(1958-1965), and the International Organizations Department (1965-1987).  He has also served

on the Dutch Advisory Committee on Human Rights and Foreign Policy.  He studied law at the

University of Amsterdam and has a Master of Arts degree in Political Science from Stanford

University.  He has published several articles on the law of torture and on international human

rights law generally.

Mr. van Boven is a Professor of Law at the University of Maastricht, Netherlands.  As the

U.N. Special Rapporteur on Torture from 2001 to 2004, he investigated incidents of torture and

cruel, inhuman, or degrading treatment throughout the world.  He has also served as a member of

the Board of Trustees of the United Nations Voluntary Fund for Victims of Torture; Registrar of

the International Criminal Tribunal for the Former Yugoslavia; U.N. Special Rapporteur on the

Rights to Restitution, Compensation, and Rehabilitation for Victims of Gross Violations of

Human Rights and Fundamental Freedoms; Director of the United Nations Division of Human

Rights; and President of the Netherlands Society for International Law.  He is the former Vice

President of the International Commission of Jurists and has taught at Harvard Law School and New York University Law School. Mr. Van Boven has a Doctor of Law from the University of Leiden, Netherlands, and a Master of Comparative Law from Southern Methodist University, Texas. He has published many books and articles on the law of torture and on international human rights law generally.

This case raises important questions about the international prohibition against torture and cruel, inhuman, or degrading treatment. Because of their extensive scholarly work and their long work within international human rights institutions, Mr. Burgers and Mr. van Boven have a significant interest in ensuring the enforcement of human rights norms, particularly the norm against torture and cruel, inhuman, or degrading treatment, in the United States and around the world.

## ISSUE PRESENTED

This brief shows that torture and cruel, inhuman, or degrading treatment violate universal, obligatory, specific, and definable norms of U.S. and international law.

## STATEMENT OF FACTS

This brief takes no position on the truth of the facts alleged in the Plaintiffs' Consolidated Amended Complaint for Declaratory Relief and Damages.

## INTRODUCTION

Torture and cruel, inhuman, or degrading treatment violate universal, obligatory, specific, and definable norms of U.S. and international law.[1]  For more than half a century, international, regional, and national laws have consistently and categorically prohibited torture and cruel, inhuman, or degrading treatment.  In modern times, "the torturer has become like the pirate and slave trader before him *hostis humani generis*, an enemy of all mankind."[2]  From its founding, the United States has banned, through the Eighth and Fifth Amendments, torture as well as cruel,

---

[1] In Sosa v. Alvarez-Machain, the Supreme Court declared that "courts should require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized." 124 S.Ct. 2739, 2761-62 (2004). In doing so, the Court affirmed circuit court decisions that required that actionable violations of international law violate a norm that is universal, obligatory, and specific. See Id. at 2766 (discussing Filartiga v. Pena-Irala, 630 F.2d 876, 890 (2d Cir. 1980); Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 781 (D.C. Cir. 1984); In re Estate of Marcos Human Rights Litigation, 25 F.3d 1467, 1475 (9th Cir. 1994)). This declaration demonstrates that torture and cruel, inhuman, or degrading treatment violate universal, obligatory and non-derogable, specific, and definable norms of international law.

[2] Filartiga v. Pena-Irala, 630 F.2d 876, 890 (2d Cir. 1980) (cited with approval by Sosa, 124 S.Ct. at 2766).

inhuman, or degrading treatment.[3]  The enduring importance of this ban is evidenced by the

prohibition under both U.S. and international law against any derogation, even during times of

war or public emergency.  The acts alleged in this case directly contradict the long-standing U.S.

commitment to this well-established international prohibition.  President Bush has publicly

reaffirmed the commitment of the United States "to the worldwide elimination of torture" and

"to prevent other cruel and unusual punishment in all territory under our jurisdiction."[4]

        The prohibition against torture and other cruel, inhuman, or degrading treatment is clear

and universal and has been subjected to rigorous analysis in U.S. courts, international and

regional bodies, and international criminal tribunals.  Although torture and other cruel, inhuman,

or degrading treatment constitute distinct categories of abuse, see Part II-C, the prohibition

against both is universal, obligatory, specific, and definable.  U.S. and international judicial

bodies have consistently found that the kinds of abuses allegedly suffered by detainees in Iraq

and Afghanistan—namely, beatings, rape, sexual assault, sexual humiliation, burning, electric

shock, cutting, painful cuffing, threats, mock executions, deprivation of food, water, sleep, or

medical care, stress positions, sensory deprivation, and exposure to extreme temperatures—fall

squarely within the prohibited practices of torture and cruel, inhuman, or degrading treatment.


**ARGUMENT**


---

[3] Indeed, even before the enactment of the Bill of Rights, Patrick Henry declared that one of the defining characteristics of the political tradition of the United States was its ban on torture and cruel, inhuman, or degrading treatment: "What has distinguished our ancestors?  That they would not admit of tortures, or cruel and barbarous punishment." 3 J. Elliot, Debates 447-48 (1863).

[4] President's Statement on the U.N. International Day in Support of Victims of Torture, Office of the Press Secretary, White House, June 26, 2004, available at http://www.whitehouse.gov/news/releases/2004/06/20040626-19.html.

I.      **THE UNITED STATES PROHIBITS TORTURE AND OTHER CRUEL, INHUMAN, OR DEGRADING TREATMENT.**

    A.      **The United States Has Consistently Prohibited Torture in Law, Policy, and Practice.**

The United States has consistently prohibited torture through its Constitution, laws, executive statements, and judicial decisions. The United States has also made this commitment clear by signing and ratifying international treaties that prohibit torture.

The United States has a long-standing commitment against perpetrating torture, even during times of war. For example, the United States has signed and ratified each of the Geneva Conventions, including the current Geneva Conventions that govern modern armed conflict.[5] See infra Part II.A. More than a decade ago, the United States ratified the International Covenant on Civil and Political Rights (ICCPR) and the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Convention against Torture), both of which expressly prohibit torture under all circumstances.[6] The United States has also taken several affirmative steps to implement its obligation to ensure that torture is not committed at

---

[5] Geneva Convention for the Amelioration of the Condition of the Wounded and Sick in the Armed Forces in the Field, Aug. 12, 1949, 6 U.S.T. 3114, 75 U.N.T.S. 31 [hereinafter First Geneva Convention]; Geneva Convention for the Amelioration of the Condition of Wounded, Sick and Shipwrecked Members of Armed Forces at Sea, Aug. 12, 1949, 6 U.S.T. 3217, 75 U.N.T.S. 85 [hereinafter Second Geneva Convention]; Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135 [hereinafter Third Geneva Convention]; Geneva Convention Relative to the Protection of Civilian Persons in Time of War, 6 U.S.T. 3516, 75 U.N.T.S. 287 [hereinafter Fourth Geneva Convention].

[6] International Covenant on Civil and Political Rights, art. 7, Dec. 16, 1966, 999 U.N.T.S. 171 (ratified by the United States on June 8, 1992) [hereinafter ICCPR] ("No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."); Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 2(2) Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85, (ratified by the United States on Oct. 21, 1994) [hereinafter Convention Against Torture] ("No exceptional circumstances whatsoever, whether a state or war or a threat of war, internal political stability or any other public emergency, may be invoked as a justification of torture.").

home or abroad.  In 1991, Congress enacted the Torture Victim Protection Act, which establishes

civil liability for acts of torture.  See 28 U.S.C. § 1350.  In 1994, Congress imposed criminal

liability for acts of torture, regardless of where such acts occur.  See 18 U.S.C. § 2340A.  In 1998,

Congress enacted the Torture Victims Relief Act to provide financial assistance to victims of

torture in the United States and abroad.  See 22 U.S.C. § 2152.

In May 2005, the U.S. government issued its Second Periodic Report to the Committee

against Torture, the U.N. body established by the Convention against Torture to monitor

compliance with the convention.  In its report, the United States categorically denounced the use

of torture and specifically rejected any derogation from the prohibition against torture:

> The United States is unequivocally opposed to the use and practice of torture. No
> circumstance whatsoever, including war, the threat of war, internal political
> instability, public emergency, or an order from a superior officer or public
> authority, may be invoked as a justification for or defense to committing torture.
> This is a longstanding commitment of the United States, repeatedly reaffirmed at
> the highest levels of the U.S. Government. All components of the United States
> Government are obligated to act in compliance with the law, including all United
> States constitutional, statutory, and treaty obligations relating to torture and cruel,
> inhuman or degrading treatment or punishment. The U.S. Government does not
> permit, tolerate, or condone torture, or other unlawful practices, by its personnel
> or employees under any circumstances. U.S. laws prohibiting such practices apply
> both when the employees are operating in the United States and in other parts of
> the world.

Second Periodic Report of the United States of America to the Committee Against Torture,

Consideration of Reports Submitted by States Parties Under Article 19 of the Convention:

United States of America, (May 6, 2005) at paras. 3-4 [hereinafter Second Report of the United

States], available at http://www.state.gov/g/drl/rls/45738.htm. [7]

---

[7] The United States Government made a similar pronouncement in 1994 to the U.N. Human
Rights Committee, which monitors compliance with the ICCPR.  See Committee against
Torture, Consideration of Reports Submitted By States Parties Under Article 19 of the
Convention: United States of America (Oct. 15, 1999), U.N. Doc. CAT/C/28/Add.5 (2000), at ¶
302 [hereinafter Initial Report of the United States].

U.S. courts consistently enforce the prohibition against torture, recognizing that the prohibition is universal, obligatory, specific, and definable.  In Filartiga v. Pena-Irala, 630 F.2d 876, 880 (2d Cir. 1980), the Second Circuit declared:

> [I]n light of the universal condemnation of torture in numerous international agreements, and the renunciation of torture as an instrument of official policy by virtually all of the nations of the world (in principle if not in practice), we find that an act of torture committed by a state official against one held in detention violates established norms of the international law of human rights, and hence the law of nations.

Every circuit that has since considered the question has likewise held that torture violates universal and well-established customary international law. See, e.g., Abebe-Jira v. Negewo, 72 F.3d 844, 847 (11th Cir. 1996) (citing Filartiga precedent that official torture is now prohibited by the law of nations, including U.S. law); Kadic v. Karadzic, 70 F.3d 232, 243 (2d Cir. 1995) (noting that torture is prohibited by "universally accepted norms of international law") (quoting Filartiga); Hilao v. Marcos: In re Estate of Ferdinand Marcos, Human Rights Litigation, 25 F.3d 1467, 1475 (9th Cir. 1994) (declaring that torture is a specific, universal, and obligatory norm of international law); Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 717 (9th Cir. 1992) ("[I]t would be unthinkable to conclude other than that acts of official torture violate customary international law. And while not all customary international law carries with it the force of a *jus cogens* norm, the prohibition against official torture has attained that status."); Mehinovic v. Vuckovic, 198 F. Supp. 2d 1322 (N.D. Ga. 2002) (holding that torture is a well-recognized violation of customary international law and U.S. law), overruled on other grounds by Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242 (11th Cir. 2005); Doe v. Islamic Salvation Front, 993 F. Supp. 3, 8 (D.D.C. 1998) (declaring that international and U.S. law prohibit torture); Doe v. Unocal, 963 F. Supp. 880, 890 (C.D. Cal. 1997) (recognizing that international and U.S. law prohibit torture); Xuncax v. Gramajo, 886 F. Supp. 162 (D. Mass.

1995) (declaring that torture is a well-recognized violation of customary international and U.S. law); Paul v. Avril, 901 F. Supp. 330 (S.D. Fla. 1994) (imposing civil liability for acts of torture).

B.    **The United States Has Consistently Prohibited Cruel, Inhuman, or Degrading Treatment in Law, Policy, and Practice.**

The United States has consistently prohibited cruel, inhuman, or degrading treatment through its Constitution, statutes, and executive statements.[8]  The U.S. judiciary has further articulated this prohibition in its case law concerning the prohibition against cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.  The United States also has signed and ratified a number of international conventions that prohibit cruel, inhuman, or degrading treatment.[9]

The U.S. government enforces the prohibition against cruel, inhuman, or degrading treatment in the United States and abroad through many domestic laws.  See 7 U.S.C. § 1733(j)(1)(A) (2000) (prohibiting the Department of Agriculture from providing agricultural commodities to countries that practice cruel, inhuman, or degrading treatment); 22 U.S.C. § 262d(a)(1) (2000) (stating that U.S. policy is to channel international assistance away from countries that practice cruel, inhuman, or degrading treatment); 22 U.S.C § 2151n(a) (2000)

---

[8] As early as the 19th century, the United States recognized the international prohibition against ill treatment of prisoners during times of war.  The Lieber Code, adopted by the Union Army to codify the law of war as it existed at that time, clearly prohibited inhumane treatment of prisoners of war: "A prisoner of war is subject to no punishment for being a public enemy, nor is any revenge wreaked upon him by the intentional infliction of any suffering, or disgrace, by cruel imprisonment, want of food, by mutilation, death, or any other barbarity."  The Lieber Code of 1863, General Orders No. 100, April 24, 1863, ¶ 56, available at http://www.civilwarhome.com/liebercode.htm.

[9] See Convention against Torture, supra note 7, at art. 16; ICCPR, supra note 7, at art. 7; Third Geneva Convention, supra note 6, at art. 3.

(prohibiting the provision of development assistance to countries that practice cruel, inhuman, or degrading treatment); 22 U.S.C. § 2304 (2000) (prohibiting security assistance to countries that practice cruel, inhuman, or degrading treatment).

In 2005, the U.S. Congress unequivocally declared that "[n]o individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment."  McCain Amendment, Pub. L. No. 109-148, § 1003, 119 Stat. 2680, 2739 (2005).  It deserves note that the language of the McCain amendment does not borrow from the language of the Eighth Amendment.  Rather, it has an international background, dating back to the 1948 Universal Declaration of Human Rights, G.A. Res 217A, at 71, U.N. GAOR, 3d Sess., 1st plen. mtg., art. 5, U.N. Doc A/810 (Dec. 12, 1948), and the 1966 International Covenant on Civil and Political Rights, art. 7, Dec. 16, 1966, 999 U.N.T.S. 171 [hereinafter ICCPR], and reaffirmed in the 1975 U.N. Declaration against Torture, Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, G.A. Res. 3452, U.N. GAOR, 30th Sess., Supp. No. 34, U.N. Doc. A/1034 (1975) [hereinafter U.N. Declaration Against Torture], and the Convention against Torture, art. 16, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85, (ratified by the United States on Oct. 21, 1994).

In its Second Report to the Committee against Torture, the United States affirmed its obligations under Article 16 of the Convention against Torture, which prohibits cruel, inhuman, or degrading treatment.  The United States explained, "Article 16 requires that States parties act to 'prevent in any territory under its jurisdiction other acts of cruel, inhuman or degrading treatment or punishment which do not amount to torture as defined in Article 1. . . ."  Second Report of the United States, supra, at ¶ 18.  The United States defined the prohibition against

9

cruel, inhuman, or degrading treatment as corresponding to the prohibition against cruel and

unusual punishment set forth in the Eighth, Fifth, and Fourteenth Amendments to the United

States Constitution.[10]

The majority of U.S. courts that have considered the matter have found that there is a

customary international law prohibition against cruel, inhuman, or degrading treatment. As the

U.S. District Court for the Northern District of California noted, "The focus . . . is on the specific

conduct at issue, and . . . whether that conduct is universally condemned as cruel, inhuman, or

degrading. . . . The fact that there may be doubt at the margins – a fact that inheres in any

definition – does not negate the essence and application of that definition in clear cases." Doe v.

Qi, 349 F.Supp.2d 1258, 1322 (N.D.Cal. 2004).  See also Jama v. U.S.I.N.S., 343 F.Supp.2d 338,

361 (D.N.J. 2004) ("The law of nations . . . can be said to have reached a consensus that the

inhumane treatment of a huge number of persons accused of no crime and held in confinement is

a violation of the law of nations."); Doe v. Islamic Salvation Front, 993 F. Supp. at 8 (holding

that international law prohibits cruel treatment); Xuncax v. Gramajo, 886 F. Supp. at 187 (noting

that cruel, inhuman, or degrading treatment is a well-recognized violation of customary

international law); Paul v. Avril, 901 F. Supp. at 330 (imposing civil liability for acts of cruel,

inhuman, or degrading treatment).  Thus, torture and other cruel, inhuman, or degrading

---

[10] The United States attached a reservation to Article 16 of the Convention against Torture,
stating:

> [T]he United States considers itself bound by the obligation under
> Article 16 to prevent "cruel, inhuman or degrading treatment or
> punishment," only insofar as the term "cruel, inhuman or
> degrading treatment or punishment" means the cruel, unusual and
> inhumane treatment or punishment prohibited by the Fifth, Eighth
> and/or Fourteenth Amendments to the Constitution of the United
> States.

Initial Report of the United States, supra note 8, at ¶ 302.

treatment are prohibited under U.S. law, and this prohibition has been recognized by U.S. courts as part of customary international law.

## II.     TORTURE AND OTHER CRUEL, INHUMAN, OR DEGRADING TREATMENT VIOLATE CUSTOMARY INTERNATIONAL LAW.

The use of torture and other cruel, inhuman, or degrading treatment violates customary international law.  Indeed, the prohibition against torture and cruel, inhuman, or degrading treatment is considered so universal and peremptory that it has reached the "superior" status of *jus cogens* norms, from which no derogation is permitted. See, e.g., Restatement (Third) of the Foreign Relations Law of the United States §§ 331 cmt. e; 702(d) cmt. n (1987) [hereinafter Restatement (Third)].

### A.  The International Law Prohibition Against Torture and Other Cruel, Inhuman, or Degrading Treatment is Universal.

Despite differences in political ideologies, social mores, and religious traditions, nations throughout the world have indicated nearly universal consent to respect the legal prohibitions against torture and other cruel, inhuman, or degrading treatment, in times of war as well as peace.

The international laws of war require nations to treat civilian and combatant detainees humanely.  Almost all countries in the world (more than 190) have assented to be bound by the humanitarian principles embodied in the 1949 Geneva Conventions.[11]  These seminal conventions govern the treatment of detainees in times of war and contain many provisions

---

[11] International Committee of the Red Cross, States party to the Geneva Conventions of 12 August 1949 and their Additional Protocols of 8 June 1977 (Apr. 12, 2005), available at http://www.icrc.org/Web/Eng/siteeng0.nsf/iwpList103/77EA1BDEE20B4CCDC1256B6600595 596.

prohibiting torture and cruel, inhuman, or degrading treatment.[12] As the Commentary on the Third Geneva Convention, which was prepared by the International Committee of the Red Cross, observes, "[t]he requirement that protected persons must at all times be humanely treated is the basic theme of the Geneva Conventions . . . ."  Jean de Preux et al., Third Geneva Convention Relative to the Treatment of Prisoners of War: Commentary 140 (1960) [hereinafter ICRC Commentary], available at http://www.icrc.org/ihl.nsf/CONVPRES?OpenView.  Indeed, the bans on torture and cruel, inhuman, or degrading treatment are so central to the purpose of the Geneva Conventions that "willful killing, torture or inhuman treatment, including biological experiments, willfully causing great suffering or serious injury to body or health,"[13] are categorized as "grave breaches" under both the Third and Fourth Conventions.  The U.S. government has long committed to upholding the Geneva Conventions.

Major international human rights instruments, which have been widely ratified, prohibit torture and other cruel, inhuman, or degrading treatment, in conformity with the Universal Declaration of Human Rights of December 10, 1948, which proclaimed, "No one shall be

---

[12] Fourth Geneva Convention, supra note 6, at art. 3; id. ("To this end, the following acts are and shall remain prohibited at any time and in any place whatsoever . . . (a) violence to life and person, in particular murder of all kinds, mutilation, cruel treatment and torture."); id. at art. 5 (requiring that such persons be "treated with humanity"); id. at art. 27 (requiring "respect for their persons, their honour" and that "[t]hey shall at all times be humanely treated, and shall be protected especially against all acts of violence or threats thereof and against insults and public curiosity"); id. at art. 31 ("No physical or moral coercion shall be exercised against protected persons, in particular to obtain information from them . . . ."); id. at art. 32 (prohibiting contracting parties "from taking any measure of such a character as to cause the physical suffering . . . of protected persons in their hands. This prohibition applies not only to murder, torture, corporal punishment, [and] mutilation . . . , but also to any other measures of brutality whether applied by civilian or military agents"); id. at art. 33 (prohibiting "all measures of intimidation"); id. at art. 147 (including among "[g]rave breaches" such conduct as "torture or inhuman treatment, . . . willfully causing great suffering or serious injury to body or health").

[13] Third Geneva Convention, supra note 6, at art. 130; Fourth Geneva Convention, supra note 6, at art. 147.

subjected to torture or to cruel, inhuman or degrading treatment or punishment." G.A. Res 217A

(III), U.N. Doc A/810 (1948).  The ICCPR, which has been ratified by more than 150 countries

including the United States, requires that "[n]o one shall be subjected to torture or to cruel,

inhuman or degrading treatment or punishment." art. 7, Dec. 16, 1966, 999 U.N.T.S. 171.  The

Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment of

December 10, 1984, 1465 U.N.T.S. 85 [hereinafter Convention against Torture], is based on the

recognition that these practices are already outlawed under international law.  Its principal aim is

to strengthen the existing prohibition by a number of rules and measures.  Cf. J.H. Burgers & H.

Danelius, The United Nations Convention against Torture 1 (1988).  One hundred forty

countries, including the United States, have ratified the Convention against Torture.[14]

Most of the detailed rules and concrete measures contained in the Convention against

Torture were devised in order to address the problem of impunity for torture committed by or on

behalf of state organs.  When acts of cruelty against defenseless persons are committed purely in

the private sphere, the executive and judicial organs of the state may normally be expected to

take action to prevent and punish such acts, and there is no need for special international action.

On the other hand, when such acts are committed by state organs or on their behalf, national

legal systems may be unwilling or indisposed to respond adequately. In order to help address this

particular problem with international measures, the Convention against Torture uses a definition

of torture that is limited to acts perpetrated for purposes related to the state and performed by or

on behalf of persons acting in an official capacity. This by no means implies, however, that acts

not meeting the Convention definition cannot constitute torture.  For instance, torture may be

committed with purposes directed against the State by insurgent movements or terrorist

---

[14]Office of the United Nations High Commissioner for Human Rights,
http://www.ohchr.org/english/countries/ratification/9.htm.

organizations or even with no political purpose whatsoever by common criminals or sadistic
madmen.

Other U.N. instruments and guidelines reinforce the prohibition against torture and other
cruel, inhuman, or degrading treatment specifically in the context of detention. See, e.g., U.N.
Body of Principles for the Protection of All Persons Under Any Form of Detention or
Imprisonment, G.A. Res. 43/173, Principles 6, 7, U.N. GAOR, 43d Sess. Supp. No. 49, U.N.
Doc. A/43/49 (Dec. 9, 1988); Standard Minimum Rules for the Treatment of Prisoners, E.S.C.
Res. 663C, ¶ 31, ECOSOC, 24th Sess., Supp. No. 1, U.N. Doc. E/3048 (July 31, 1957), amended
by E.S.C. res. 2076, at 35, ECOSOC, 62d Sess., Supp. No. 1, U.N. Doc. E/5988 (May 13, 1977)
("[A]ll cruel, inhuman, or degrading punishments shall be completely prohibited as punishments
for disciplinary offences.").

In addition, every major regional human rights system condemns torture and other cruel,
inhuman, or degrading treatment.  The American Convention on Human Rights (American
Convention), which the United States has signed,[15] provides that "[n]o one shall be subjected to
torture or to cruel, inhuman, or degrading punishment or treatment."  Organization of American
States, American Convention on Human Rights, art. 5, Nov. 22, 1969, O.A.S.T.S. No. 36, 1144
U.N.T.S. 123; see also American Declaration of the Rights and Duties of Man (American
Declaration), art. XXV, O.A.S. Res. XXX, 9th Int'l Conf. Am. States (1948) ("[Every individual
deprived of his liberty] has the right to humane treatment during the time he is in custody.");
Inter-American Convention to Prevent and Punish Torture, Dec. 9, 1985, O.A.S.T.S. No. 67.[16]

---

[15] The United States has signed but not ratified the American Convention on Human Rights.

[16] Twenty states in the Americas have ratified the Inter-American Convention to Prevent and
Punish Torture.

The Inter-American Court of Human Rights, which enforces the American Convention, has declared, "In essence, Article 5 refers to the rule that nobody should be subjected to torture or to cruel, inhuman, or degrading punishment or treatment, and that all persons deprived of their liberty must be treated with respect for the inherent dignity of the human person." Neira Alegria v. Peru, 1995 Inter-Am. Ct. H.R. (ser. C) No. 20, at ¶ 86 (Jan. 19, 1995).

The European Convention for the Protection of Human Rights and Fundamental Freedoms, which has been ratified by forty-five European nations, provides, "No one shall be subjected to torture or to inhuman or degrading treatment or punishment." European Convention for the Protection of Human Rights and Fundamental Freedoms, art. 3, Nov. 4, 1950, 213 U.N.T.S. 221 [hereinafter European Convention]; see also European Convention for the Prevention of Torture and Inhuman or Degrading Treatment or Punishment, Nov. 26, 1987, E.T.S. No. 126.

The African Charter on Human and Peoples' Rights, which has been ratified by each of the fifty-three members of the African Union, provides, "All forms of exploitation and degradation of man particularly slavery, slave trade, torture, cruel, inhuman or degrading punishment and treatment shall be prohibited." See African Charter on Human and Peoples' Rights, art. 5, June 27, 1981, art. 5, OAU Doc. CAB/LEG/67/3/Rev. 5 (1981).

More than eighty national constitutions provide the right to be free from torture and cruel or degrading treatment or punishment.[17] The prohibition against torture and other cruel, inhuman, or degrading treatment has reached such a degree of universal consensus that no nation today publicly asserts a right to torture or treat inhumanely its own or another nation's citizens.

---

[17] Cherif Bassiouni, Human Rights in the Context of Criminal Justice: Identifying International Procedural Protections and Equivalent Protections in National Constitutions, 3 Duke J. Comp. & Int'l L. 235, 263-64 n.128 (1993) (listing each national constitution that prohibits torture and cruel and degrading treatment).

**B.  The International Law Prohibition Against Torture and Other Cruel,
Inhuman, or Degrading Treatment is Obligatory Under All Circumstances.**

The prohibition against both torture and cruel, inhuman, or degrading treatment is

obligatory and non-derogable – neither public emergency nor any other extenuating

circumstance may be invoked to justify such acts.  The United States has expressly declared its

strict adherence to this categorical principle.  In fact, the United States has declared before the

international community that, in the United States, "otherwise prohibited acts of torture or other

cruel, inhuman or degrading treatment or punishment [cannot] be employed on grounds of

exigent circumstances." Committee against Torture, Consideration of Reports Submitted by

States Parties Under Article 19 of the Convention: United States of America (Oct. 15, 1999),

U.N. Doc. CAT/C/28/Add.5 (2000), at ¶ 6 [hereinafter Initial Report of the United States].

Many international treaties and declarations contain provisions expressly declaring that

no excuse exists for torture or cruel, inhuman, or degrading treatment.  See, e.g., Convention

against Torture, supra, at art. 2(2) ("No exceptional circumstances whatsoever, whether a state of

war or a threat of war, internal political instability or any other public emergency, may be

invoked as a justification of torture."); ICCPR, supra, art. 4 (derogation from right to be free of

torture or cruel, inhuman, or degrading treatment not permitted even in time of public

emergency); Body of Principles for the Protection of All Persons under Any Form of Detention

or Imprisonment, supra, at Principle 6 ("No circumstance whatever may be invoked as

justification for torture or other cruel, inhuman or degrading treatment or punishment."). The

American Convention and the European Convention also declare that the prohibition against

torture and cruel, inhuman, or degrading treatment is non-derogable.  American Convention,

supra, art. 27(2); European Convention, supra, art. 15(2); see also Inter-American Convention to

Prevent and Punish Torture, supra, art. 5 ("The existence of circumstances such as a state of war,

threat of war, state of siege or of emergency, domestic disturbance or strife, suspension of

constitutional guarantees, domestic political instability, or other public emergencies or disasters

shall not be invoked or admitted as justification for the crime of torture.").  The Council of

Europe has likewise stated, "States may never[,] . . . whatever the acts of the person suspected of

terrorist activities, or convicted of such activities, derogate from . . . the prohibition against

torture or inhuman or degrading treatment or punishment."  Council of Europe, Guidelines of the

Committee of Ministers of the Council of Europe on human rights and the fight against

terrorism, art. XV(2) (July 11, 2002).

The Geneva Conventions' prohibition against torture and other cruel, inhuman, or

degrading treatment of detainees is also non-derogable.  As the ICRC Commentary on the Third

Geneva Convention declares, "The requirement of humane treatment and the prohibition of acts

inconsistent with it are general and absolute in character.  They are valid at all times . . . ."  ICRC

Commentary supra, at 140.  If a nation could invoke war to justify an exception to the

prohibition against torture and cruel, inhuman, or degrading treatment, the central purpose and

many core provisions of the Geneva Conventions guaranteeing the humane treatment of

detainees would be rendered a nullity.

The Committee against Torture, which monitors compliance with the Convention against

Torture, has also emphasized the absolute nature of the prohibition against torture.  No

circumstances, including terrorist threats or conditions of war, justify acts of torture. This

absolute prohibition applies even to nations such as Israel that continually face terrorist attacks.

See, e.g., Committee against Torture, Consideration of Reports Submitted by States Parties under

Article 19 of the Convention: Israel, ¶ 258, U.N. Doc. A/52/44 (1997). ("The Committee

acknowledges the terrible dilemma that Israel confronts in dealing with terrorist threats to its

security, but as a State party to the Convention Israel is precluded from raising before this

Committee exceptional circumstances as justification for acts prohibited by article 1 of the

Convention.  This is plainly expressed in article 2 of the Convention.").  Indeed, the Supreme

Court of Israel has expressly rejected the use of torture or cruel, inhuman, or degrading treatment

under any circumstances, declaring: "These prohibitions [on torture, cruel, inhuman, or

degrading treatment] are 'absolute.' There are no exceptions to them and there is no room for

balancing."  See, e.g., Pub. Comm. Against Torture v. State of Israel, 38 I.L.M. 1471, ¶ 23

(1999) (internal citations omitted). The Israeli Supreme Court declared:

> This is the destiny of democracy, as not all means are acceptable to it and not all
> practices employed by its enemies are open before it.  Although a democracy
> must often fight with one hand tied behind its back, it nonetheless has the upper
> hand.  Preserving the Rule of Law in recognition of an individual's liberty
> constitutes an important component in its understanding of security.  At the end of
> the day they strengthen its spirit and its strength and allow it to overcome its
> difficulties.

Id. at ¶ 39.

Regional courts have also repeatedly affirmed that the prohibition against torture and

cruel, inhuman, or degrading treatment is unconditional, even where war or the threat of

terrorism exists. For example, the European Court of Human Rights noted in a case involving the

treatment of terrorism suspects that "[t]he [European] Convention prohibits in absolute terms

torture and inhuman or degrading treatment or punishment . . . . [T]here can be no derogation

therefrom even in the event of a public emergency threatening the life of the nation." Ireland v.

United Kingdom 2 E.H.R.R. 25, ¶ 163 (1978); see also Selmouni v. France, 29 E.H.R.R. 403, ¶

95 (1999) ("Even in the most difficult circumstances, such as the fight against terrorism and

organized crime, the [European] Convention prohibits in absolute terms torture and inhuman or

degrading treatment or punishment."); Tomasi v. France, 15 E.H.R.R. 1, ¶ 115 (1992) ("The

requirements of the investigation and the undeniable difficulties inherent in the fight against crime, particularly with regard to terrorism, cannot result in limits being placed on the protection to be afforded in respect of the physical integrity of individuals.").

The Inter-American Court has likewise declared: "The prohibition of torture and cruel, inhuman or degrading punishment or treatment is absolute and non-derogable, even under the most difficult circumstances, such as war, threat of war, struggle against terrorism or any other crimes, state of emergency, disruption, or internal conflict, suspension of constitutional guarantees, internal political instability, or other public calamities or emergencies." Case of Lori Berenson Mejía v. Perú, 2004 Inter-Am. Ct. H.R. (ser. C), No. 119, at ¶ 100 (Nov. 25, 2004) (unofficial translation); see also Case of Loayza-Tamayo v. Peru, 1997 Inter-Am. Ct. H.R. (ser. C), No. 33, at ¶ 57 (Sept. 17, 1997) ("The exigencies of the investigation and the undeniable difficulties encountered in the anti-terrorist struggle must not be allowed to restrict the protection of a person's right to physical integrity."); Case of Cantoral-Benavides v. Peru, 2000 Inter-Am. Ct. H.R. (ser. C), No. 69, at ¶ 96 (Aug. 18, 2000) ("[T]he fact that a State is confronted with terrorism should not lead to restrictions on the protection of the physical integrity of the person.").

### C. The International Law Prohibition Against Torture and Other Cruel, Inhuman, or Degrading Treatment is Specific and Definable.

Although torture and cruel, inhuman, or degrading treatment are related, each is specific and definable. Torture is the deliberate infliction of severe pain or suffering on a person who cannot defend himself and who cannot escape. Article 1 of the Convention against Torture uses the following definition:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third

person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

Convention against Torture, supra, art. 1. For the purposes of this Convention, the definition distinguishes three specific components of torture, namely that it (1) inflicts severe mental or physical pain or suffering, (2) has a purpose, such as obtaining information or a confession, punishing, or intimidating, and (3) is inflicted by or for a public official. Moreover, it has a fourth component, although not explicitly mentioned in the Convention, namely that the victim of the ill-treatment is a person who is deprived of his liberty or who is at least under the actual power or control of the person inflicting the pain or suffering. See J.H. Burgers & Hans Danelius, The United Nations Convention against Torture 120 (1988). When the second or third element is missing, the international obligations ensuing from the Convention do not apply, even if the ill-treatment might still come under the general concept of torture.

The prohibition against cruel, inhuman, or degrading treatment encompasses both physical and mental abuse that does not constitute torture or that was done without a relevant purpose. The Greek Case, 1069 Y.B. Eur. Conv. on H.R. 186, 461-505 (Eur. Comm'n on H.R.) (1972). Article 16 of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment defines state obligations specifically with regard to "other acts of cruel, inhuman, or degrading treatment or punishment which do not amount to torture as defined in article 1, when such acts are committed by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Convention against Torture, supra, at art. 1.

The category of acts that constitute cruel, inhuman, or degrading treatment is broader than the category of acts that constitute torture, because cruel, inhuman, or degrading treatment may involve acts that are less severe in pain or that were done without a relevant purpose.  This category is not, however, unbounded.  Cruel, inhuman, or degrading treatment involves only those acts that are, in fact, "cruel," "inhuman" or "degrading."  As the European Commission on Human Rights[18] pointed out, degrading treatment is defined as action that interferes with the dignity of the individual to a sufficiently serious degree.  East African Asians v. United Kingdom, 3 E.H.R.R. 76 (Eur. Comm'n H.R.) (1973).

Cruel, inhuman, or degrading treatment, therefore, encompasses mental or physical pain and suffering inflicted by or for a public official that either: 1) causes serious suffering that is not so severe as to constitute torture; or 2) causes severe suffering but is not inflicted for a purpose such as obtaining information or a confession, punishment, coercion, or intimidation.

For an act to constitute cruel, inhuman, or degrading treatment, it must pass a minimum threshold.  The European Court of Human Rights has recently emphasized that "ill-treatment must attain a minimum level of severity if it is to fall within [the prohibition against inhuman, or degrading treatment]."  Iorgov v. Bulgaria, 40 E.H.R.R. 7, ¶ 70 (2004) See also East African Asians v. United Kingdom , 3 E.H.R.R. at ¶ 189 (stating that "degrading treatment" must meet a minimum requirement of severity); Cicek v. Turkey, 37 E.H.R.R. 20, ¶ 172 (2001) ("[T]he suffering occasioned must attain a certain level before treatment can be considered as inhuman.").  The suffering involved must go beyond "that inevitable element of suffering or humiliation connected with a given form of legitimate treatment or punishment."  Iorgov, 40

---

[18] With the adoption of Protocol 11 to the European Convention on Human Rights, the European Commission was eliminated as part of the Council of Europe's judicial system.

E.H.R.R. ¶ 71.  Thus, treatment that does not occasion serious mental or physical pain or suffering does not constitute cruel, inhuman, or degrading treatment.

Certain categories of abuses unquestionably constitute cruel, inhuman, or degrading treatment and therefore violate customary international law.  As one U.S. court noted, "[i]t is not necessary that every aspect of what might comprise a standard such as 'cruel, inhuman, or degrading treatment' be fully defined and universally agreed upon before a given action meriting the label is clearly proscribed under international law." Xuncax, 886 F. Supp. 162, 187 (D. Mass. 1995).

The U.S. Supreme Court's analysis in its recent decision in Sosa v. Alvarez Machain endorses a similar approach.  124 S. Ct. 2739 (2004).  In distinguishing a detention that did not rise to the level of a *jus cogens* violation from a prolonged detention that would satisfy the *jus cogens* standard, the Court declared that "it is easy to say that some policies . . . are so bad that those who enforce them become enemies of the human race." Id. at 2769.  Torture and cruel, inhuman, or degrading treatment are precisely the kind of practices that the United States and the international community consider to be "so bad."  Torture and cruel, inhuman, or degrading treatment constitute universal, obligatory, specific, and definable violations of the laws of nations.

## CONCLUSION

Torture and cruel, inhuman, or degrading treatment constitute universal, obligatory, specific, and definable violations of the law of nations. The specific types of abuses alleged in the complaint in Ali et al. v. Rumsfeld et al. – namely, beatings, rape, sexual assault, sexual humiliation, burning, electric shock, cutting, painful cuffing, threats, mock executions, deprivation of food, water, sleep, or medical care, stress positions, sensory deprivation, and

exposure to extreme temperatures – fall squarely within the prohibited practices of torture and

cruel, inhuman, or degrading treatment.


Dated:  June 30, 2006                              Respectfully submitted,[19]

                                                   /s/ James J. Silk
                                                   _____
                                                   James J. Silk, DC Bar No. 428 433
                                                   Molly K. Beutz
                                                   Allard K. Lowenstein International Human
                                                   Rights Clinic
                                                   Yale Law School
                                                   P.O. Box 208215
                                                   New Haven, CT  06520-8215
                                                   Tel: 203-432-1729

                                                   _____
                                                   Counsel for Amici Curiae

---

[19] Counsel gratefully acknowledge the assistance of Yale Law School students Alicia L. Bannon and Stacie L. Jonas in the preparation of this brief.