UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>IRAQ AND AFGHANISTAN DETAINEES LITIGATION | Misc. No. 06-145 (TFH) |
| This document relates to:<br><br>ALI v. PAPPAS<br>ALI v. RUMSFELD<br>ALI v. KARPINSKI<br>ALI v. SANCHEZ | Civ. No. 05-cv-1377 (TFH)<br>Civ. No. 05-cv-1378 (TFH)<br>Civ. No. 05-cv-1379 (TFH)<br>Civ. No. 05-cv-1380 (TFH) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
RESPONDING TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

**INTRODUCTION**

On November 15, defendant Donald H. Rumsfeld and the United States filed a Notice of Supplemental Authority calling the Court's attention to Section 5 of the Military Commissions Act of 2006, Pub. L. 109-366, 120 Stat. 2600 (the "MCA"),[1] which defendants contend provides that plaintiffs "may not obtain relief under the Geneva Conventions."

Contrary to defendants' cursory assertion, MCA Section 5 does not affect plaintiffs' claims for two separate reasons. First, Section 5 operates prospectively and does not apply to bar claims that, like plaintiffs', were pending on the date of the MCA's enactment. Second, Section 5 unconstitutionally seeks to bar courts from hearing any claims that invoke the Geneva

---

[1] The Notice of Supplemental Authority was filed only on behalf of the United States and defendant Rumsfeld, who nevertheless assert that Section 5 of the MCA applies with respect to all defendants. Plaintiffs' arguments in this brief would also apply to the other defendants in this action.

Conventions as a source of rights, and cannot be given effect. As the Supreme Court recently made clear in *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), the Geneva Conventions are part of the "supreme law of the land" and are manifestly a source of rights – a substantive font of positive law providing a rule of decision for federal courts – aimed squarely at protecting individuals caught up in the course of armed conflict. To that end, the Conventions also afford plaintiffs a cause of action to enforce key provisions when the rights they provide are violated. The MCA does nothing to change the Geneva Conventions in either respect. Plaintiffs' claims under the Geneva Conventions should be allowed to proceed.

I.  **SECTION 5 OF THE MILITARY COMMISSIONS ACT OF 2006 DOES NOT APPLY TO THIS PENDING CASE**

Section 5 cannot affect the Court's determination of plaintiffs' claims because it was enacted (on October 17, 2006) while this case was pending. In determining whether a statute applies to pending cases, courts apply the deeply rooted "presumption against retroactive legislation." *Landgraf v. USI Film Products*, 511 U.S. 244 (1994); *see also Chew Heong v. United States*, 112 U.S. 536 (1884); *Nat'l Mining Assoc. v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002). A statute may not be applied retroactively to bar claims pending before the statute's enactment "absent a clear indication from Congress that it intended such a result." *INS v. St. Cyr*, 533 U.S. 289, 316 (2001). A statute that is silent about its temporal reach should be construed under "'[n]ormal rules of construction,' including a contextual reading of the statutory language" to operate prospectively. *Hamdan*, 126 S. Ct. at 2765 (internal citation omitted). Even where a statute is ambiguous under ordinary rules, courts will not retroactively apply a statute that impairs rights or attaches new legal consequences to events completed before its enactment. *Landgraf*, 511 U.S. at 270.

2

A.  **Section 5 Operates Prospectively**

Section 5 contains no express provision making it applicable to pre-enactment cases (nor does it contain even an effective date provision), and therefore should be construed to operate prospectively. Section 5(a) of the MCA provides: [2]

> IN GENERAL – No person may invoke the Geneva Conventions or any protocols thereto in any habeas corpus or other civil action or proceeding to which the United States, or a current or former officer, employee, member of the Armed Forces, or other agent of the United States is a party as a source of rights in any court of the United States or its States or territories.

"A familiar principle of statutory construction" on which the Supreme Court has relied in this context "is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan*, 126 S. Ct. at 2765 (by negative inference, provisions of Detainee Treatment Act of 2005 are prospective); *Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (same, with respect to provisions of Antiterrorism and Effective Death Penalty Act).

The absence of any express provision applying Section 5 to pending cases or pre-enactment events stands in sharp contrast to numerous specific provisions of the MCA that dictate temporal reach. Congress knew how to provide immediate effective dates or to address the temporal reach of provisions when it desired to do so. For example, Congress provided that the MCA amendments to the War Crimes Act take effect as of an earlier date. MCA § 6(b)(2) ("RETROACTIVE APPLICABILITY – The amendments made by this subsection . . . shall take effect as of November 26, 1997 . . . ."). It specified the pre-enactment events or conduct other statutory provisions were intended to reach. *See*, *e.g.*, MCA § 8(b)(3) (providing that revisions

---

[2] Section 5(b) identifies the four Geneva Conventions of 1949, including the Fourth Geneva Convention (Relative to the Protection of Civilian Persons), to which Section 5(a) applies. *See also* Geneva Conventions I – IV, Aug. 12, 1949, 6 U.S.T. 3114, 75 U.N.T.S. 31; 6 U.S.C. 3217, 75 U.N.T.S. 85; 6 U.S.T. 3316, 75 U.N.T.S. 135; 6 U.S.T. 3516, 75 U.N.T.S. 287, respectively.

to the Detainee Treatment Act of 2005 "relates to actions occurring between September 11, 2001, and December 30, 2005"); MCA §§ 948a and 948d(c) (providing that definition of "unlawful enemy combatant" included a person who had been so determined "before, on, or after the date of the enactment of the [MCA]" and findings are dispositive whether made "before, on, or after the date of the enactment of the [MCA]").  In addition, Congress specified when it sought to apply restrictions to any action or cases "pending on" or after the date of the MCA enactment.  *See* MCA § 950j; MCA § 7(b).  The only permissible conclusion from Section 5's silence concerning its own retroactive reach is that Congress intended Section 5 to operate prospectively.  "Nothing, indeed, but a different intent explains the different treatment." *Lindh*, 521 U.S. at 329.

   The drafting history of the MCA supports this conclusion.  The Administration-sponsored bill, which Congress rejected in favor of the MCA, contained a provision entitled "RETROACTIVE APPLICATION," stating that "This Act shall take effect on the date of the enactment of this Act and shall apply retroactively, including to any aspect of the detention, treatment, or trial of any person *detained at any time since September 11, 2001*, and *to any claim or cause of action pending on or after the date of the enactment of this Act*."  Bringing Terrorists to Justice Act of 2006, S. 3861, 109th Cong. § 9 (placed on calendar in Senate, Sept. 8, 2006) (emphasis added).  By contrast, no general retroactivity provision was included in the MCA, fatally undercutting any arguments by defendants that retroactivity was intended where it was not specified.  *See Hamdan*, 126 S. Ct. at 2766 ("Congress' rejection of the very language that would have achieved the result the Government urges here weighs heavily against the Government's interpretation.").

4

In any event, even if Section 5 is not deemed unambiguously prospective, it fails to meet the high level of clarity for retroactive application required by the Supreme Court. Statutes "will not be construed to have retroactive effect unless their language compels this result." *Landgraf*, 511 U.S. at 272; *see also St. Cyr*, 533 U.S. at 316-17 ("Cases where this Court has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation.").

> B.  **If Applied To Plaintiffs' Case, Section 5 Would Have an Impermissible Retroactive Effect**

Absent an unambiguous direction from Congress, a statute will not be applied to pending cases where it would have an impermissible retroactive effect. "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *St. Cyr*, 533 U.S. at 321 (internal citation omitted). Even if Section 5 could pass constitutional scrutiny, *see* discussion *infra* Point II, taking the rights and obligations of the Geneva Conventions off the books in court would clearly have a retroactive effect, depriving plaintiffs of a broad range of rights. *See* Pls. Opp. Br. at 79-80 (provisions of the Fourth Geneva Convention confer individual rights); Defendant Rumsfeld Mo. at 32 (conceding, as did the Court of Appeals, that the 1949 Convention at issue in *Hamdan* "protect individual rights"); *see also Hamdan*, 126 S. Ct. at 2794 n.57 (quoting ICRC Commentaries stating "the 1949 Geneva Conventions were written 'first and foremost to protect individuals'" and the "existence of 'rights' conferred in prisoners of war was affirmed" in those Conventions).

The rights of plaintiffs, and the corresponding obligations imposed on defendants, have been in place for nearly fifty years and were in force at the time of defendants' violations. *See Landgraf*, 511 U.S. at 265 ("Elementary considerations of fairness dictate that individuals should

have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."). Applying Section 5 retroactively to this case would impair plaintiffs' rights and change the legal consequences of pre-enactment events. Because Congress has not provided an explicit mandate for retroactive application, Section 5 does not apply here.

## II.     SECTION 5 OF THE MCA CANNOT ALTER THE STATUS OF THE GENEVA CONVENTIONS AS BINDING LAW

Defendants previously asked this Court to ignore the Geneva Conventions on the ground that the Conventions are not "judicially enforceable." Their latest submission coupled with their prior pleadings suggests that they believe the Geneva Conventions may neither be considered by a court as a source of substantive rights, nor may they be invoked by any party as providing an independent cause of action in federal court. In short, defendants ask this Court to ignore the fact that those treaties are, under the Constitution, the "supreme law of the land," and to find that the MCA, passed in the wake of the Supreme Court's decision in *Hamdan v. Rumsfeld*, which held that key U.S. policies violated the Geneva Conventions, precludes plaintiffs from invoking the Geneva Conventions in court. This contention cannot be squared with the text or history of the Conventions, the MCA, basic principles of statutory construction and constitutional law, or the Supreme Court's recent decision.

### A.     The Geneva Conventions are a Source of Rights and Afford Plaintiffs a Cause of Action

Defendants' assertion that the Geneva Conventions are not judicially enforceable conflates two entirely distinct legal concepts: first, whether the Conventions are a source of substantive law that can provide a rule of decision in any proceeding properly in federal court (for example, in *habeas corpus*, Alien Tort Statute or declaratory judgment actions); and second,

6

whether the Conventions afford private litigants an independent cause of action to enforce Convention obligations against the government.[3]  Because these issues are discussed in detail in plaintiffs' Opposition Brief, filed May 19, 2006 ("Pls. Opp. Br."), at 77-84, we here only briefly address each point as context for a response to defendants' most recent submission.

The relevant provisions of the Fourth Geneva Convention are specific, mandatory and binding rules that confer individual rights and state obligations.  *See* Pls. Opp. Br. at 79-81 (citing Common Article 3 and Articles 27, 31, 32, 118 and 119).  Both the Senate and the Executive at the time of ratification understood the Geneva Conventions, including the provisions at issue here, to be self-executing – that is, to set forth binding federal law without any further action by Congress.  *See id*. at 80-81; *Hamdan v. Rumsfeld*, 344 F.Supp.2d 152, 164-65 (D.D.C 2004).  Thus, when ratified in 1955, the Conventions became the "supreme law of the land" that courts are bound to enforce whenever the treaties provide a rule of decision.  *See* U.S. Const. art. IV, cl. 2; *Head Money Cases [Edye v. Robertson]*, 112 U.S. 580, 598 (1884) (treaty is to be enforced "whenever its provisions prescribe a rule by which the rights of the private citizen or subject may be determined.").[4]

Any doubts as to whether the Geneva Conventions contain such substantive rights were put to rest this year by the Supreme Court.  *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006)

---

[3] *See Jogi v. Voges*, 425 F.3d 367, 377, 384 (7th Cir. 2005) (whether treaty provides rights is distinct from whether treaty provides right of action for damages); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 104-05 (1989) (lower court erred in holding that there was no right of action for damages under Section 1983 where plaintiffs established a federal right under the National Labor Relations Act).

[4] This feature of the Conventions is particularly relevant here, where, in addition to their stand-alone Geneva Convention claims for declaratory relief and damages, plaintiffs separately seek relief for treaty violations under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2002, and damages and declaratory relief for violations of the law of nations and of the Geneva Conventions, under the Alien Tort Statute, 28 U.S.C. § 1350.  For these statutory claims, which provide independent causes of action, the Geneva Conventions serve as a rule of decision, which cannot be prohibited by the MCA.  *Hamdan*, 126 S. Ct. at 2794 (Geneva Conventions may be invoked through "some other provision of law").  This issue is discussed in more detail *infra* at Point II.B.i.

(holding in habeas action that requirements of Common Article 3, incorporated by reference in Article 21 of the Uniform Code of Military Justice, 10 U.S.C. § 821, were violated). The Supreme Court rejected the judgment of the D.C. Circuit, which had held that the Geneva Conventions are not judicially enforceable – the same argument defendants now make here. While reserving judgment on the scope of specific mechanisms by which the treaties may be enforced, the Supreme Court held that the Geneva Conventions set down rules that are binding upon the United States Government. Although it recognized that the fair trial requirements of Common Article 3 of the Conventions are broad standards, the Court held that as far as the government is concerned, "*requirements* they are nonetheless." *Id.* at 2798 (emphasis in original); *see also id.* at 2802 (Common Article 3 "is part of a treaty the United States has ratified and thus accepted as binding law") (Kennedy, J., concurring).

Neither the Supreme Court nor the D.C. Circuit has addressed the separate question whether key provisions of the Geneva Conventions also provide an independent cause of action for particular remedies. In *Hamdan*, the Supreme Court left open precisely that question. *Id.* at 2794 & nn. 57-58 (citing authorities strongly suggesting that the Conventions do provide such a right of enforcement, including the Commentaries of the International Committee of the Red Cross stating that the Conventions "protect individuals" and affirm "the existence of 'rights'" that may be "evoked before an appropriate national court by the protected person who has suffered a violation"). For all of the reasons set forth in plaintiffs' Opposition Brief, it is clear that the relevant provisions of the Fourth Geneva Convention do afford plaintiffs a right of action to obtain, at minimum, a declaration that defendants' policies and practices violate the law. *See* Pls. Opp. Br. at 82-83; *see also Jogi v. Voges*, 425 F.3d 367, 384-85 (7th Cir. 2005) (Vienna

8

Convention confers rights and right of action for damages); *Cannon v. University of Chicago*, 441 U.S. 677, 690-93 (1979).[5]

### B.  Section 5 is an Unconstitutional Limitation on the Court's Power to Apply and Interpret the Law and Cannot Be Given Effect

By its own terms, Section 5 of the MCA does not address the availability of an independent cause of action under the Geneva Conventions. Rather, it takes aim at the question at issue in the Supreme Court's *Hamdan* decision, and purports to deny that the Geneva Conventions are a substantive "source of rights" providing a rule of decision in any U.S. court proceeding. But as the Supreme Court recently affirmed, as long as the United States is a party to the Geneva Conventions, they are the supreme law of the land under the Constitution and a source of positive law. Short of abrogating or superseding the treaties as legal obligations – which Congress expressly declined to do – Congress cannot constitutionally direct the courts to ignore the Conventions' status as law and not to apply them. Nor can Section 5 be saved by an alternate construction: to construe it to mean that the Geneva Conventions do not afford a cause of action would distort the text and its manifest purpose. Therefore, Section 5 cannot be given effect.

---

[5] Any judicial caution that may commonly accompany implying rights of actions against private parties is not warranted where individuals seek declaratory relief that official executive action violates the law. *See Verizon Maryland Inc. v. Public Serv. Comm'n. of Md.*, 535 U.S. 635, 651 (2002) (Souter, J., concurring) ("a request for declaratory or injunctive relief is simply a formality for obtaining a process of review"). Moreover, the Geneva Conventions predate the Supreme Court's current framework for assessing implied rights of action, *see Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 811 (1986) ("The development of our framework for determining whether a private right of action exists has proceeded only in the last 11 years, and its inception represented a significant change in our approach to congressional silence on the provision of federal remedies."); they should therefore be interpreted under the more liberal understandings in effect at the time they were ratified. *See generally* Carlos Manuel Vazquez, *Treaty-Based Rights and Remedies of Individuals* 92 Colum. L. Rev. 1082, 1155 (1992).

i.   **Section 5 Purports to Deny Courts the Power to Look to the Geneva Conventions as a Source of Rights**

The text of Section 5 seeks to bar the Geneva Conventions as a "source of rights." MCA § 5(a) ("No person may invoke the Geneva Conventions or any protocols thereto . . . as a *source of rights* in any court of the United States or its States or territories.") (emphasis added). The language "source of rights" has long been understood by courts to mean the substantive rules courts should apply, not the mechanism by which those rules are enforced.[6] Courts have thus regularly used "source of rights" to describe and distinguish a statute that can provide a rule of decision in a case from a statute that merely gives litigants a cause of action – a handle for opening the federal courthouse door. *See*, *e.g.*, *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (Section 1983 "is not itself a *source of substantive rights*, but merely provides a method for vindicating federal rights elsewhere conferred.") (emphasis added and internal quotation marks and citation omitted); *Spottsville v. Barnes*, 135 F.Supp. 2d 1316, 1321 (N.D. Ga. 2001) ("Section 1983 creates a private *right of action* for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges or immunities 'secured by the Constitution or laws' . . . Section 1983 is *not a source of rights* . . . .") (emphasis added); *Jackson-Gilmore v. Dixon*, 2005

---

[6] *See*, *e.g.*, *Griswold v. Connecticut*, 381 U.S. 479, 492 (1965) (discussing whether "the Ninth Amendment constitutes an independent *source of rights* protected from infringement by either the States or the Federal Government"); *Harris v. C.I.R.*, 340 U.S. 106, 111 (1950) ("We, however, think that the gift tax statute is concerned with the *source of rights*, not with the manner in which rights at some distant time may be enforced."); *Department of Navy*, *Marine Corps Logistics Base*, *Albany*, *Ga. v. Federal Labor Relations Authority*, 962 F.2d 48, 60 (1992) ("[T]he parties' collective bargaining agreement supplants the statute as the *source of rights* and obligations regarding such matters."). (Emphasis added in all).

WL 3110991, at *9 (E.D. Pa. 2005) ("Section 1983 is not a *source of rights* but rather permits a *cause of action* for the violation of other federal rights.") (emphasis added).[7]

Section 5 reflects a compromise reached after hard-fought negotiations regarding the force of the Geneva Conventions as a source of positive law. The version of the MCA passed originally by the Senate Armed Services Committee aimed at something entirely different – namely, at eliminating a private right of action under the Conventions for damages.[8] The Administration, however, sought to effect a broader change.[9] The bill put forward by the Administration in the wake of *Hamdan* sought to overturn two key aspects of the Supreme Court's holding – that detainees held at Guantanamo Bay could pursue federal habeas petitions (in which detainees sought to invoke the Geneva Conventions as a rule of decision), and that Common Article 3 of the Geneva Conventions applied and limited the conduct of the U.S. Government in the conflict with Al Qaeda. *See* Bringing Terrorists to Justice Act of 2006, S. 3861 109th Cong. §§ 2(9), 5, 6(a) (placed on calendar in Senate, Sept. 8, 2006). Congress rejected the Administration's initial draft, which would have redefined Common Article 3's fair

---

[7] Courts draw the distinction in other contexts as well, including, for example, in determining federal question jurisdiction. *See*, *e.g.*, *Merrell Dow Pharmaceuticals Ins. v. Thompson*, 478 U.S. 804 (1986) (distinguishing state law cause of action from federal rule of decision); *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561 (2d Cir. 1995) (fact that "federal law provides a cause of action" for violation of collective bargaining agreement and for default on its ERISA plan obligations was insufficient to confer federal jurisdiction since those provisions "are not the *source of the rights* or duties sought to be enforced . . . ."); *Cooper v. TWA Airlines, LLC*, 349 F. Supp.2d 495, 509 (E.D.N.Y. 2004) (explaining that "state-law *cause of action* is not pre-empted . . . if it involves rights and obligations that exist independent of the [collective bargaining agreement]," but finding that plaintiffs "cannot point to a state law *source of rights* independent of these . . . agreements"). (Emphasis added in all).

[8] *See infra* Point II.B.ii.

[9] The Administration-sponsored bill provided: "Rights not judicially enforceable – In General – No person in any habeas action or any other action may invoke the Geneva Conventions or any protocols thereto as a *source of rights*; whether directly or indirectly, for any purpose in any court of the United States or its States or territories." Bringing Terrorists to Justice Act of 2006, S. 3861, 109th Cong. § 6(b)(1) (emphasis added).

11

trial and detainee treatment standards, and Senate opponents were unequivocal that the United States not abandon or abrogate its participation in the Geneva Convention regime.  *See* 152 Cong. Rec. S10246 (daily ed. Sept. 27, 2006) (statement by Sen. Warner) ("Such an action [reinterpretation of the Geneva Conventions] could open the door to statutory reinterpretation by a host of other nations with less regard for human rights than the United States . . . ."); 152 Cong. Rec. S10413 (daily ed. Sept. 28, 2006) (statement of Sen. McCain) ("[T]his legislation before the Senate does not amend, redefine, or modify the Geneva Conventions in any way.").  As Senator McCain explained, the MCA left the Geneva Conventions "intact."  *Id.*  Instead, a compromise was struck in which the meaning of Common Article 3 would be left legislatively unchanged, the Conventions would not be abrogated, [10] but courts would be instructed, by the plain language of Section 5, not to look in any proceeding to the Geneva Conventions as a source of positive law.[11]

While the text and history of Section 5 thus leave no question that eliminating the Geneva Conventions as a source of rights was Congress' intent, the Constitution denies Congress the power to leave the Geneva Conventions on the books, but then to order the courts to pretend the Conventions do not exist.  Courts have the power and the duty, as a constitutional matter, to look to the whole supreme law bearing on a case.  *See* U.S. Const. art. III, § 2(1); *Martin v. Hunter's*

---

[10] While Congress has the authority to abrogate or supersede treaties when it clearly expresses its intent to do so, *see TWA, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 252 (1984); *Cook v United States*, 288 U.S. 102, 120 (1933); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 238 (D.C. Cir. 2003), it did not do so here.  The MCA by its own terms reaffirms the Geneva Conventions as binding law.  *See*, *e.g.*, MCA, § 6 (implementing Article 129 of the Third Geneva Convention by defining and criminally penalizing "grave breaches" of Common Article 3).

[11] The effect of Section 5 did not escape opponents of the compromise bill, who otherwise supported the decision to leave the Geneva Conventions intact:  "[S]ection 5 of the bill provides that no person – whether that person is an enemy combatant or anybody else – may invoke the Geneva Conventions as a source of rights in a habeas corpus or other proceeding in any court of the United States.  Section 948b(g) of the military commissions part of the bill would similarly provide that no person subject to trial by military commission may invoke the Geneva Conventions as a source of rights. These provisions, like the habeas corpus provision, appear to be *designed to ensure that administration policies that may have violated our obligations under U.S. and international law will never be aired in court*." 152 Cong. Rec. S10418 (daily ed. Sept. 28, 2006) (statement of Sen. Levin) (emphasis added).

*Lessee*, 14 U.S. (1 Wheat.) 304, 340-41 (1816) ("From the very nature of their judicial duties they would be called upon to pronounce the law applicable to the case in judgment . . . according to the constitution, laws and treaties of the United States – 'the supreme law of the land.'"). Attempts to limit the laws that courts can look to violate the constitutionally mandated judicial function. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803) (rejecting view that courts were limited to interpreting the Judiciary Act and "must close their eyes on the Constitution, and see only the law"); *cf. Martin*, 14 U.S. (1 Wheat.) at 357-60 (federal statute limiting appellate jurisdiction to cases in which construction of treaties "apparent upon the record" did not preclude court from invoking treaty, "for it was the supreme law of the land, of which all courts must take notice."). To give effect to Section 5 as written would deny courts the power to "say what the law is." *Marbury*, 5 U.S. (1 Cranch) at 177 ("It is emphatically the province and duty of the judicial department to say what the law is."); s*ee also Sanchez-Llamas v. Oregon*, 126 S. Ct. 2699, 2684 (quoting Marbury, 5 U.S. (1 Cranch) at 177) ("If treaties are to be given effect as federal law under our legal system, determining their meaning as a matter of federal law 'is emphatically the province and duty of the judicial department,' headed by the 'one supreme Court' established by the Constitution.").[12]

For this reason, courts have struck down statutes, like Section 5, styled as limitations on litigants' ability to invoke laws on the books. *See* MCA § 5(a) ("*No person may invoke* the Geneva Conventions . . . in any court of the United States or its States or territories.") (emphasis added). In *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001), the Supreme Court struck

---

[12] Just as Congress may not without amending (or in this case, explicitly abrogating or superseding) the substantive law "prescribe a rule of decision to the Judicial Department of the government in cases pending before it", *United States v. Klein*, 80 U.S. (13 Wall.) 128, 146-47 (1871), Congress may not direct federal courts to ignore laws on the books that provide a rule of decision in a case properly before them. Henry Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev 1362, 1373 (1953) ("[I]f Congress directs an Article III court to decide a case, I can easily read into Article III a limitation on the power of Congress to tell the court how to decide it.").

down a statute prohibiting legal service providers funded by the federal government from invoking constitutional or statutory challenges in court.  Upholding the litigants' first amendment challenge, the Court based its decision largely on "separation-of-powers principles." *Id.* at 545-46.  The Court found that "[t]he statute is an attempt to draw lines around the [ ] program to exclude from litigation those arguments and theories Congress finds unacceptable but which by their nature are within the province of the courts to consider," and concluded that the statute "threatens severe impairment of the judicial function." *Id*. at 546.

Because the plain language and the history of the statute evince Congress' intent to interfere with the courts in a way it cannot constitutionally do, MCA Section 5 is unconstitutional and cannot be given effect.

### ii.     Section 5 Cannot Be Saved By An Alternate Construction

Defendants might argue that the Court should read "source of rights" to mean something other than what it says – namely, to mean that the Geneva Conventions do not afford plaintiffs a cause of action.  But such a reading of Section 5 is not only contrary to the text and history of the provision, it would be tantamount to a judicial rewriting of it.  As the Supreme Court has emphasized, "'although this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute' . . . or judicially rewriting it." *Aptheker v. Secretary of State*, 378 U.S. 500, 515 (1964) (internal citation omitted); *see also Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 841 (1986) (same); *U.S. Dep't of Air Force v. Fed. Labor Relations Auth.*, 952 F.2d 446, 452 n.6 (D.C. Cir.1991) ("When a rule (or a statute) is clear, a court cannot distort its meaning to avoid constitutional or statutory conflict.").

14

The term "cause of action" is not a lesser included concept within "source of rights"; it is a different idea entirely. As hundreds of congressional statutes demonstrate, Congress knows how to eliminate or limit private rights of action by using the well-established terms "right of action" or "cause of action," or by referring to remedies.[13] *See*, *e.g.*, 6 U.S.C. § 134 ("Nothing in this part may be construed to create a private right of action for enforcement of any provision of this chapter."). For example, responding to pending lawsuits for money damages against manufacturers and distributors of firearms, among others, for harm caused by third parties, Congress enacted a law prohibiting such "causes of action." 15 U.S.C. § 7901 (setting out findings and purposes); *see* 15 U.S.C. § 7902 (providing that certain "civil liability action[s]" may not be brought in any court and that pending actions are to be dismissed).

Moreover, construing Section 5 to mean that the Geneva Conventions do not afford a cause of action would distort Congress' purpose. It would effectively enact into law a statute that Congress had considered *but rejected* – an earlier version of Section 5 contained in the Senate Armed Services Committee bill would have eliminated a private action for damages using well-established terms.

> In General – No person may invoke the Geneva Conventions or any protocols thereto as an *individually enforceable right in any civil action* against an officer, employee, member of the Armed Forces or another agent of the United States Government, or against the United States, *for the purpose of any claim for damages* for death, injury, or damage to property in any court of the United States or its States or territories. . . . This subsection does not affect the obligations of the United States under the Geneva Conventions.

S. 3901, 109th Cong. (2006) §7(a) (placed on calendar in Senate, Sept. 14, 2006) (emphasis added). *See Aptheker*, 378 U.S. at 515 ("[T]his Court will not consider the abstract question of

---

[13] In contrast to the over 800 statutes containing at least one of the terms "right of action," "cause of action," "remedies" or "damages" found in the Westlaw public law database since 1973, *no* enacted statute, other than the MCA, contains the term "source of rights."

whether Congress might have enacted a valid statute but instead must ask whether the statute that Congress did enact will permissibly bear a construction rendering it free from constitutional defects."). Given the clarity of the text and the drafting history of MCA Section 5, this Court should construe Section 5 as it was drafted, and give it no effect.

\* \* \*

Notably, defendants refer only to Section 5 of the MCA in the Notice of Supplemental Authority. Plaintiffs note that the MCA in its entirety supports plaintiffs' position that civil actions by foreign detainees abused in Iraq and Afghanistan are contemplated by Congress and have not been barred. *See generally* Pls. Opp. Br. at 11-12, 43-45. In contrast to the MCA provisions specifically purporting to bar the Geneva Conventions as a "source of rights" and to repeal habeas corpus jurisdiction under 28 U.S.C. § 2241 for persons determined to be (or awaiting determination as) "enemy combatants," the MCA does not bar civil suits by other detainees for damages under *Bivens* or the Alien Tort Statute or for other relief. To the contrary, the MCA (like the Detainee Treatment Act, Pub. L. No. 109-148, 119 Stat. 2680, 2739 (2005) ("DTA")) recognizes that civil suits, including suits for damages, will proceed. The MCA (and DTA), for example, enact or amend provisions that acknowledge civil suits, provide a limited good faith defense for some actions and require the government to provide or pay counsel if military or government officials are sued in United States courts.[14] These provisions show that civil suits by foreign detainees seeking declaratory relief and damages against individual government and military officials are not prohibited under the theories proffered by defendants

---

[14] The MCA amended DTA § 1404 to preserve and expand the provision for the government to pay defendants' litigation costs by making the payment mandatory and expressly including proceedings "before United States courts." *See* MCA § 8 (amending DTA § 1404(b) to mandate payment of counsel for defendants and to include proceedings "before United States courts or agencies" as well as foreign and international fora). *See* Pls. Opp. Br. at 44 (citing DTA §§ 1404(a), 1404(b)).

16

in this case.  In short, the MCA underscores that Congress recognized the existence of civil suits (including for damages), that suits against legally culpable individuals are not barred, and, indeed, that the Constitution is among the fundamental protections applicable to detainees in U.S. military custody.[15]

## CONCLUSION

For the reasons given above, the recently-enacted Military Commissions Act does not bar plaintiffs' Geneva Convention claims and supports plaintiffs' claims for relief.

Respectfully submitted,

---

[15] *See, e.g.*, MCA § 6 ("No individual in the custody or under the physical control of the United States Government, regardless of nationality of physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment . . . In this subsection, the term 'cruel, inhuman, or degrading treatment or punishment' means cruel, unusual and inhumane treatment or punishment prohibited by the Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, as defined in the United States Reservations [to the U.N. Convention against Torture]").

/s/ *Lucas Guttentag*

_____
LUCAS GUTTENTAG
CECILLIA D. WANG
JENNIFER C. CHANG
MÓNICA M. RAMÍREZ
American Civil Liberties Union   Foundation Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0773


STEVEN R. SHAPIRO
OMAR C. JADWAT
AMRIT SINGH
STEVEN WATT
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 549-2500


/s/ *Arthur B. Spitzer*

_____
ARTHUR B. SPITZER
D.C. Bar No. 235960
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
(202) 457-0800

JAMES P. CULLEN*
BG, JAGC, USA (ret.)
Of Counsel, Human Rights First
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1565

/s/ *Deborah Pearlstein*

_____
MICHAEL POSNER*
DEBORAH PEARLSTEIN*
HINA SHAMSI*
PRITI PATEL*
Human Rights First
333 Seventh Avenue, 13th Floor
New York, NY 10001-5004
(212) 845-5200


BILL LANN LEE
CHIMÈNE I. KEITNER
NIREJ S. SEKHON
Lieff Cabraser Heimann & Bernstein LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA 94111-3339
(415) 956-1000


JOHN D. HUTSON*
RADM, JAGC, USN (ret.)
Of Counsel, Human Rights First
2 White Street
Concord, NH 03301
(603) 228-1541



DAVID RUDOVSKY
Kairys, Rudovsky, Epstein & Messing LLP
924 Cherry St., Suite 500
Philadelphia PA 19107
(215) 925-4400

<table>
<tr><td>PAUL HOFFMAN<br>Schonbrun DeSimone Seplow Harris &<br>   Hoffman LLP<br>723 Ocean Front Walk<br>Venice, CA 90291<br>(310) 396-0731</td><td>ERWIN CHEMERINSKY<br>Duke University School of Law<br>Science Drive & Towerview Rd.<br>Durham, NC  27707<br>(919) 613-7173</td></tr>
</table>

Counsel for Plaintiffs

November 28, 2006

* Representing Plaintiffs against Defendant Rumsfeld only