

--- F.3d ----  
--- F.3d ----, 2006 WL 3454994 (C.A.D.C.)  
**(Cite as: --- F.3d ----)**

Page 1

United States Court of Appeals, District of Columbia Circuit.

Mary T. MAJANO, Appellant,  
v.  
UNITED STATES, Appellee.  
**No. 05-5200.**

Argued Sept. 15, 2006.  
Decided Dec. 1, 2006.

Appeal from the United States District Court for the District of Columbia (No. 04cv00201).

David C. Gray argued the cause and filed the briefs for appellant.  
Alan Burch, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were Kenneth L. Wainstein, U.S. Attorney at the time the brief was filed, and R. Craig Lawrence, Assistant U.S. Attorney. Michael J. Ryan, Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH and GRIFFITH, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GRIFFITH.

GRIFFITH, Circuit Judge.  
*1 Appellant Mary T. Majano seeks damages for injuries she suffered when Jeanny Kim, a fellow employee at the Smithsonian Institution, allegedly assaulted her at work. Under the terms of the Westfall Act, 28 U.S.C. ß 2679(d)(1), federal employees are immune from state tort lawsuits for money damages if their tortious conduct occurred while they were acting within the scope of their employment. *Haddon v. United States,* 68 F.3d 1420, 1422-23 (D.C.Cir.1995). The United States is the only proper defendant against such actions. But the United States has retained its sovereign immunity against assault claims. Therefore, Majano's sole hope of success requires that she show Kim's assault was not within the scope of her employment, such that the Westfall Act would not render Kim immune from suit. The issue presented by this appeal is whether the district court in granting summary judgment against Majano correctly concluded that no reasonable jury could find that Kim's assault was outside the scope of her employment. We disagree and so reverse the district court.

I.

Many of the facts recounted here are disputed by the Government, but because we are reviewing a grant of summary judgment against appellant Majano, we must view the evidence "as favorably to [her] as reason will permit." *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1295 (D.C.Cir.1998) (quoting *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990)). On the afternoon of June 17, 2003, Majano, a custodial worker at the Smithsonian's Victor Building, arrived at work. She entered the building through an unmonitored secure door in the parking structure. As she proceeded through the door, she heard someone calling to her. She turned and saw Kim, a senior manager at the Smithsonian whom she did not know, approaching the door. Majano had been instructed by her supervisors not to let persons enter the building if they were unknown to her unless they provided official identification showing they were entitled to entry. Without allowing Kim to pass through

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                           Page 2
--- F.3d ----, 2006 WL 3454994 (C.A.D.C.)
**(Cite as: --- F.3d ----)**

the door, Majano asked to see Kim's identification. Instead of showing Majano her identification, Kim pushed Majano out of the doorway and forced her way into the building.

After they were both inside the building, Majano proceeded down a thirty-foot hallway that led to a bay of elevators. Kim followed closely, muttering obscenities and calling Majano "stupid." Upon reaching the elevators, Kim grabbed the lanyard around Majano's neck by the attached access card and repeatedly yanked it. The force of Kim's action snapped Majano's access card in two. When the elevator arrived, Majano entered first. Kim followed. Once in the elevator, the two neither spoke to nor touched each other, and parted without further incident. In the weeks following the assault, Majano experienced continual pain and discomfort. A physician diagnosed a herniated disk in her neck that he attributed to the trauma from Kim forcefully and repeatedly pulling the lanyard. The pain in Majano's neck required surgery and forced her to quit work at the Smithsonian. She remains disabled and unable to work.

**\*2** Majano brought tort claims against Kim in D.C. Superior Court seeking damages for her injuries. Pursuant to the Westfall Act, 28 U.S.C. ß 2679(d)(2), the Attorney General of the United States certified that Kim's conduct was within the scope of her federal employment, the United States was automatically substituted as the sole defendant, and the matter was removed to federal district court. The Government moved to dismiss, arguing that even if the facts alleged in Majano's complaint were true, her claims would fail as a matter of law because no reasonable jury could find that Kim was acting outside the scope of her employment. Majano filed a motion in opposition and moved for discovery and an evidentiary hearing. The district court denied the Government's motion to dismiss and granted Majano's motion for discovery. After discovery was completed, the Government filed a motion for summary judgment, which the district court granted, concluding as a matter of law that the Government had established that Kim was acting within the scope of her employment.

II.

We affirm summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Put another way, a party is entitled to summary judgment only if no reasonable jury could return a verdict for the non-moving party." *United States ex rel. Bettis v. Odebrecht Contractors,* 393 F.3d 1321, 1325-26 (D.C.Cir.2005). The non-moving party is "granted [ ] the benefit of all reasonable evidentiary inferences that can be drawn in his favor." *Toney v. Bergland,* 645 F.2d 1063, 1066 (D.C.Cir.1981). We review the district court's grant of summary judgment *de novo. Fort Sumter Tours, Inc. v. Babbitt,* 202 F.3d 349, 354 (D.C.Cir.2000).

The narrow question presented in this appeal is whether there was sufficient evidence to permit a reasonable jury to conclude that Kim was acting outside the scope of her employment when she assaulted Majano. At the outset, we note that scope of employment questions are generally viewed as questions of fact best resolved by a jury. *See Jordan v. Medley,* 711 F.2d 211, 215 (D.C.Cir.1983) ("Before examining the evidence on this point, we may note that the District of Columbia courts have considered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
Page 3
--- F.3d ----, 2006 WL 3454994 (C.A.D.C.)
**(Cite as: --- F.3d ----)**

it to be the general rule that scope of employment presents a jury question."); *Lyon v.. Carey,* 533 F.2d 649, 655 (D.C.Cir.1976) ("It is, then, a question of fact for the trier of fact, rather than a question of law for the court, whether the assault stemmed from purely and solely personal sources or arose out of the conduct of the employer's business ...."); *Boykin v. District of Columbia,* 484 A.2d 560, 562 (D.C.1984) ("As a general rule, whether an employee is acting 'within the scope of employment' is a question of fact for the jury."); *Penn Cent. Transp. Co. v. Reddick,* 398 A.2d 27, 31 (D.C.1979) ("Whether an assault which was the proximate cause of the injury was within the scope of [ ] employment ... as a general rule, has been held to be a question of fact for the jury to determine.")(internal quotation marks and citation omitted). On the infrequent occasions when courts have resolved scope of employment questions as a matter of law, either by summary judgment or directed verdict, it has generally been to hold that the employee's action was *not* within the scope of her employment and thus to absolve the employer of any liability. In *Jordan,* writing for this Court, then-Judge Scalia explained why it would be unusual to find, as a matter of law, that an employee was acting within the scope of her employment when she committed an intentional tort: "A directed verdict against the employer would be particularly rare in the case of an intentional tort, which by its nature is willful and thus more readily suggests personal motivation ." 711 F.2d at 215. The same principle holds true for summary judgment. *Richardson by Richardson v. Richardson-Merrell, Inc.,* 857 F.2d 823, 828 n. 29 (D.C.Cir.1988) (noting that "the standard for direction of a verdict mirrors the standard for summary judgment").

**\*3** Against this backdrop, we consider whether this is one of those unusual cases in which a reasonable jury would have to find the employee's conduct within the scope of her employment. We find that it is not. Scope of employment questions are governed by the law of the place where the employment relationship exists. *Kimbro v. Velten,* 30 F.3d 1501, 1506 (D.C.Cir.1984). In this case that is the District of Columbia. We look to the decisions of the Court of Appeals for the District of Columbia for our guidance on the local law. *See e.g., Lyon,* 533 F.2d at 655 (applying case law of the Court of Appeals of the District of Columbia for a scope of employment question); *Jordan,* 711 F.2d at 213-14 (same). "As its framework for determining whether an employee acted within the scope of employment, the Court of Appeals for the District of Columbia looks to the Restatement (Second) of Agency (1957)." *Haddon,* 68 F.3d at 1423. Under the Restatement, an employee's conduct falls within the scope of employment if: 1) it is of the kind of conduct he is employed to perform; 2) it occurs substantially within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the master; and 4) if force is intentionally used by the servant against another, the use of force is not unexpected by the master. RESTATEMENT (SECOND) OF AGENCY ß 228 (1957). If the employees' conduct is different in kind from that authorized, far beyond time or space limits, or too little actuated by a purpose to serve the master, then the conduct is not within the scope of employment. *Id.*

Majano makes two arguments in support of her contention that Kim's conduct was outside the scope of her employment. First, she argues that Kim's assault in front of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2006 WL 3454994 (C.A.D.C.)
**(Cite as: --- F.3d ----)**

Page 4

elevators does not meet the third Restatement factor because it was not "actuated, at least in part, by a purpose to serve the [Smithsonian]." Second, she argues that Kim's use of force was not expected by the Smithsonian. Because we believe that a reasonable jury could conclude that Kim was not motivated by a desire to serve the Smithsonian when she yanked Majano's lanyard, we do not need to reach this second argument. As to her first argument, under the law of the District of Columbia, "the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends." *Schecter v. Merch. Home Delivery, Inc.*, 892 A .2d 415, 427 (D.C.2006) (citation omitted). The key inquiry is the employee's intent at the moment the tort occurred.

Our opinion in *M.J. Uline v. Cashdan,* 171 F.2d 132 (D.C.Cir.1949), illustrates this point nicely. *Uline* involved a hockey player who, while trying to strike an opposing player with his stick, mistakenly hit a spectator. The trial court judge instructed the jury that the player was acting within the scope of his employment when the tortious conduct occurred. We found error in the instruction and held that "the [hockey player] may have been, at the moment he struck the blow, completely indifferent to the work he was employed to do and actuated only by anger or hostility toward the man he tried to injure." *Id*. at 134. We concluded that the jury should have been allowed to determine the player's intent when he struck the blow. Even though the hockey player was playing hockey, the conduct for which he was employed, and was doing so at the time and place he was employed to play, still we found that a reasonable jury could yet determine that he was not acting out of a desire to serve his employer when he struck the blow and was thus not acting within the scope of his employment.

**\*4** The nature of the attack also informs the intent analysis. In *Penn Central,* the Court of Appeals for the District of Columbia held that a railroad worker was not acting within the scope of his employment but was instead motivated by purely personal reasons when he kicked a taxicab driver on his way from one worksite to another. The court reached this conclusion in part because of the "violent and unprovoked" nature of the attack. *Penn Central,* 398 A.2d at 32. In *Jordan,* we held that the nature of the alleged tort "permits the imputation of a purely personal motivation," and quoted language from the *Penn Central* court. 711 F.2d at 216. "The outrageous quality of an employe's [*sic* ] act may well be persuasive in considering whether his motivation was purely personal ." *Id*. (quoting *Penn Central,* 398 A.2d at 31) (internal quotation marks omitted).

Kim had a duty to report to work. Her forcible entry into the building appears to be motivated, at least in part, by her desire to fulfill that duty. But once she gained access to the building, Kim's assault of Majano has all the markings of an independent trespass. The assault was violent and unprovoked and took place after Kim had walked approximately 30-feet down a hallway well inside the building. We think that a reasonable jury could look at these facts and conclude that when Kim assaulted Majano, she had turned away from her purpose to gain entry to the building and instead was acting "solely for the accomplishment of [her] independent malicious or mischievous

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2006 WL 3454994 (C.A.D.C.)  
**(Cite as: --- F.3d ----)**

Page 5

purposes." *Penn Central,* 398 A.2d at 32 (internal quotation marks and citation omitted).

Accordingly, we reverse and remand.

*So ordered.*

C.A.D.C.,2006.  
Majano v. U.S.  
--- F.3d ----, 2006 WL 3454994 (C.A.D.C.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.