UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>IRAQ AND AFGHANISTAN DETAINEES LITIGATION | Misc. No. 06-145 (TFH) |
| This document relates to:<br><br>ALI v. PAPPAS<br>ALI v. RUMSFELD<br>ALI v. KARPINSKI<br>ALI v. SANCHEZ | Civ. No. 05-cv-1377 (TFH)<br>Civ. No. 05-cv-1378 (TFH)<br>Civ. No. 05-cv-1379 (TFH)<br>Civ. No. 05-cv-1380 (TFH) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND
NOTICE OF SUPPLEMENTAL AUTHORITY (*HAMDAN*)**

Plaintiffs submit this memorandum in response to the Notice of Supplemental Authority [39] recently filed by defendant Rumsfeld and the United States regarding Judge Robertson's decision in *Hamdan v. Rumsfeld*, No. 04-1519 (JR), ___ F. Supp. 2d ___, 2006 WL 3625015 (D.D.C. Dec. 13, 2006).

That decision addressed the effect of Section 7 of the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"), on the availability of habeas corpus jurisdiction over Salim Ahmed Hamdan's pending habeas petition challenging his trial before a military commission. Judge Robertson held that Section 7 of the MCA removed the district courts' statutory habeas jurisdiction over Hamdan's petition and that Hamdan does not have the right to the "'constitutional' writ of habeas corpus." 2006 WL 3625015 at *2, *7-9. Judge Robertson

also held that Congress did not "suspend" the writ within the meaning of the Constitution's Suspension Clause, U.S. Const. art. I, § 9 cl. 2. *Id.* at *3-6.

Judge Robertson's ruling addresses only MCA § 7, which amends the federal habeas corpus statute, 28 U.S.C. § 2241. Section 7 by its terms expressly applies only to an alien who has been "determined by the United States" to have been "properly detained as an enemy combatant" or who is "awaiting such determination."[1] Because MCA § 7 specifies that it applies only to aliens properly detained as "enemy combatants," the provision has no application to plaintiffs here, who were never charged as enemy combatants and are plainly not awaiting such a determination.

The United States and Rumsfeld acknowledge that *Hamdan* does "not directly address[] the issue of whether the protections of the Fifth and Eighth Amendments apply to non-citizens detained abroad." Notice of Supp. Auth. at 1. Defendants nonetheless assert that the decision supports their view that plaintiffs' constitutional claims should be dismissed on qualified immunity grounds.

---

[1] The relevant provision of Section 7(a) specifies that the following subsections shall be added to 28 U.S.C. § 2241:

> ''(e)(1) No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States who has been **determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination**.
>
> ''(2) Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has **been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination**.''

(Emphasis added.)

As set forth below, *Hamdan* does not advance defendants' position because (1) Judge Robertson correctly and expressly limited his analysis to the availability of habeas corpus in light of the MCA, (2) under *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), qualified immunity analysis requires this Court to decide first whether defendants violated plaintiffs' Fifth and Eighth Amendment rights before addressing whether those rights were clearly established, and (3) the constitutional analysis governing the availability of habeas corpus is entirely distinct from the Fifth and Eighth Amendment issues presented here.

**1.** Judge Robertson explicitly limited his analysis to the Constitution's protection of the writ of habeas corpus under the Suspension Clause. He took care to note that he was *not* addressing "whether and to what extent enemy aliens may invoke other constitutional rights .…" 2006 WL 3625015 at *9 n.15.[2] Thus, *Hamdan* expressly does not reach the Fifth and Eighth Amendment claims presented in the instant case, and the opinion necessarily recognizes that they raise different issues.

Judge Robertson's decision also turned on his determination that the petitioner in *Hamdan* was indistinguishable from the petitioners in *Eisentrager v. Johnson*, 339 U.S. 763 (1950), for all relevant purposes. Hence, Hamdan could not invoke the constitutional writ that the *Eisentrager* petitioners were denied. In reaching this conclusion, Judge Robertson stressed that Hamdan was presently subject to a military commission "acting according to guidelines laid down by the Supreme Court," and it was "difficult to see how continued habeas jurisdiction

---

[2] Judge Robertson stated: "My ruling does not address whether and to what extent enemy aliens may invoke other constitutional rights; I find only that the Suspension Clause does not guarantee the right to petition for habeas corpus to non-resident enemy aliens captured and detained outside the United States." 2006 WL 3625015 at *9 n.15.

3

could make further improvements in his tribunal" (the results of which are reviewable in the D.C. Circuit). 2006 WL 3625015 at *8.

Even if Judge Robertson were correct that Hamdan is similarly situated to the petitioners in *Eisentrager,* the plaintiffs in this action plainly are not. The Court in *Rasul* stressed the "six critical facts in the case" on which the *Eisentrager* opinion turned. 542 U.S. at 467. The plaintiffs here do not satisfy the "six critical facts" for being encompassed by the *Eisentrager* (or *Hamdan)* rationale. *See* Pls. Br. Opp. at 31-32. They are *not* held in military custody as prisoners of war; they have *not* been tried and convicted by a military commission outside the United States; and they have *never* been charged much less convicted of any wrongdoing under the laws of war. Their claim concerns not their detention, conviction or trial by military commissions but their indefensible abuse and torture.

**2.** Defendants' assertion that Judge Robertson's decision supports their claim of qualified immunity does not acknowledge the requirement of *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), that the Court must first determine whether the Constitution has been violated before addressing whether the rights at issue were clearly established. *See* Pls. Opp. Br. at 53-54. As defendants acknowledge, *Hamdan* does not address constitutional rights against torture, expressly "does not directly address[] the issue of whether the protections of the Fifth and Eighth Amendments apply to non-citizens detained abroad," Supp. Auth. at 1; *see Hamdan* 2006 WL 3625015 at *9 n.15, and thereby recognizes that the determination of which constitutional rights are available under such circumstances must be determined case by case. In addition, defendants' submission does not address plaintiffs' fundamental point that the purposes of immunity are not served where, as here, the underlying prohibition was clearly and indisputably established. *See* Pls. Opp. Br. at 54-58.

**3.** Of critical significance, as Judge Robertson's decision recognizes, the applicability of the Fifth and Eighth Amendments at issue in this case does not turn on the unique custodial and territorial issues relevant to the availability of habeas corpus jurisdiction.[3] As set forth in our Opposition Brief ("Pls. Opp. Br.") at 20-23, the *Rasul* Court endorsed Justice Kennedy's concurring opinion in *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), regarding invocation of constitutional rights by aliens outside the United States. *See Rasul* 452 U.S. at 483 n.15. That analysis adopts the view that the Constitution protects the fundamental rights of aliens abroad when it is not impracticable or anomalous to do so. *See In re Guantanamo*, 355 F. Supp. 2d 443, 463 (D.D.C. 2005) (Green, J.). Under that standard, the constitutional prohibition against torture applies even if the writ of habeas corpus is arguably not available as a statutory (or even constitutional) matter in a particular location.

The distinction between the availability of habeas corpus and the applicability of fundamental constitutional rights is further confirmed by *Rasul's* holding that Guantanamo detainees could also assert claims under 28 U.S.C. § 1331 (as well as under the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS")) – the very statutes through which the plaintiffs here assert their claims for relief. The Supreme Court's separate affirmance of § 1331 jurisdiction in *Rasul* confirms the view that aliens who cannot invoke the habeas corpus statute may nonetheless be able to enforce constitutional claims.

---

[3] In *Rasul v. Bush*, 542 U.S. 466 (2004), the Supreme Court analyzed the territorial reach and availability of habeas corpus based on the particular statutory jurisprudence governing the habeas writ in light of *Eisentrager*, the interpretation of the habeas statute in *Ahrens v. Clark*, 335 U.S. 188 (1948), and the subsequent analysis of the statute in *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484 (1973). The *Rasul* Court then held that habeas corpus was available to Guantanamo detainees as a statutory matter without deciding whether the Constitution's Suspension Clause would also require that result. Even assuming that Judge Robertson correctly applied *Rasul* and the MCA to the facts and circumstances in *Hamdan*, that habeas analysis cannot resolve the constitutional claims that the plaintiffs in this case present.

The Constitution's prohibition against torture fits squarely within the applicability of constitutional rights that the *Rasul* Court approved by endorsing Justice Kennedy's "impracticable and anomalous" test from *Verdugo-Urquidez*, especially where the plaintiffs are *undisputed innocent civilians* imprisoned under the complete jurisdiction and control of the United States in a territory subject to the "exclusive jurisdiction" of U.S. law and where no other legal authority governs. Pls. Opp. Br. at 25. There is no dispute that protection from torture is a fundamental right under the Constitution, *see* Pls. Opp. Br. at 8-9, and that torture of any person is categorically prohibited by United States law and policy. *See, e.g.*, 28 U.S.C. § 2340A (imposing criminal penalties on any U.S. national for torture committed outside the United States); 18 U.S.C. § 2441 (War Crimes Act applicable to any member of the Armed Forces of the United States); Army Field Manual 34-52 (specifying prohibited acts of torture). Hence, enforcement of the constitutional prohibition is neither impracticable nor anomalous.

The acts of torture that plaintiffs seek to litigate in this case are critically different from potentially privileged acts of combat that military commanders and troops may take during times of war including, for example, killing enemy commanders or soldiers, detaining prisoners of war, and prosecuting unlawful combatants. But torture (like genocide) is never permissible. The prohibition against torture constitutes an absolute, universal and categorical norm embodied in the Fifth and Eighth Amendments that is applicable even where the vehicle of habeas might not be available to assert claims of unlawful detention.

The very fact that defendants violated the longstanding and categorical prohibitions against torture demonstrates the essential need for private damages actions under the Constitution (and the ATS) to enforce the core rights at issue here. Such private enforcement of constitutional rights is precisely the purpose recognized by the Supreme Court in *Bivens v. Six*

6

*Unknown Agents,* 403 U.S. 388 (1971). The failure of the existing legal prohibitions to prevent defendants' actions underscores the essential need for a constitutional damages remedy in this case.

**4.** Finally, as set forth in our response to defendants' earlier submission of the Military Commissions Act of 2006, the new statute in fact supports *plaintiffs'* position that damages claims may be pursued by aliens who are not alleged to be "enemy combatants." As already noted, MCA § 7 applies specifically only to aliens determined to be enemy combatants (or who are awaiting such determination). *See supra* n.1. The MCA implicitly recognizes the availability of civil suits by *other* detainees who are *not* "enemy combatants" for damages under *Bivens* or the Alien Tort Statute and for other relief. *See* Plaintiffs' Supp. Memo in Response to MCA at 16-17, filed December 1, 2006.[4]

**CONCLUSION**

For all of the foregoing reasons, Judge Robertson's ruling in *Hamdan* does not support defendants' motion to dismiss.

Respectfully submitted,

---

[4] Defendants previously submitted Section 5 of the MCA to this Court's attention in support of their motion to dismiss plaintiffs' Geneva Convention claims. After plaintiffs filed a supplemental brief showing why MCA § 5 did not apply to plaintiffs' pending claims, defendants did not file a response and did not pursue that assertion at oral argument.

7

/s/ Lucas Guttentag

_____
LUCAS GUTTENTAG
CECILLIA D. WANG
JENNIFER C. CHANG
MÓNICA M. RAMÍREZ
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
(415) 343-0773


STEVEN R. SHAPIRO
OMAR C. JADWAT
AMRIT SINGH
STEVEN WATT
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
(212) 549-2500


/s/ Arthur B. Spitzer

_____
ARTHUR B. SPITZER
D.C. Bar No. 235960
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
(202) 457-0800


JAMES P. CULLEN*
BG, JAGC, USA (ret.)
Of Counsel, Human Rights First
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1565

/s/ Deborah Pearlstein

_____
MICHAEL POSNER*
DEBORAH PEARLSTEIN*
HINA SHAMSI*
PRITI PATEL*
Human Rights First
333 Seventh Avenue, 13th Floor
New York, NY 10001-5004
(212) 845-5200


BILL LANN LEE
Lieff Cabraser Heimann & Bernstein LLP
Embarcadero Center West
275 Battery Street, Suite 3000
San Francisco, CA 94111-3339
(415) 956-1000


JOHN D. HUTSON*
RADM, JAGC, USN (ret.)
Of Counsel, Human Rights First
2 White Street
Concord, NH 03301
(603) 228-1541


DAVID RUDOVSKY
Kairys, Rudovsky, Epstein & Messing LLP
924 Cherry St., Suite 500
Philadelphia PA 19107
(215) 925-4400

8

| | |
|---|---|
| PAUL HOFFMAN<br>Schonbrun DeSimone Seplow Harris &<br>    Hoffman LLP<br>723 Ocean Front Walk<br>Venice, CA 90291<br>(310) 396-0731 | ERWIN CHEMERINSKY<br>Duke University School of Law<br>Science Drive & Towerview Rd.<br>Durham, NC  27707<br>(919) 613-7173 |

Counsel for Plaintiffs

January 8 , 2007

* Representing Plaintiffs against Defendant Rumsfeld only